GEORGE W. HENDERSON *vs.* BARNABAS HERROD et al.

Sales by a commissioner under decrees of the chancery court should be regulated very much by the same rules which apply to execution sales at law by a sheriff, the object in each instance being the same ; that is, the execution ·of the judgment or decree of the court. *Held*, that the interest of suitors, as well as public policy, demands that the sale should be in each instance · alike certain and obligatory, and that the title which a purchaser obtains in either mode, should possess a similar degree of validity and force.

This court has heretofore decided that until a commissioner's sale has been ·confirmed it is not valid ; yet it has also held, that the parties to the sale may act in such a manner as to give the sale the effect and validity of an order of confirmation by the court. See 3 S. & M. 493 ; 4 Ib. 210.

The chancellor, in refusing to confirm a commissioner's sale, should exercise not an arbitrary, but a sound legal discretion, and what would be a sufficient ground for a refusal to confirm must depend in a great degree upon the circumstances of each case, such as fraud, accident, mistake or surprise in relation to the sale, or the time of the sale, or the title of the property sold, or the failure on the part of a purchaser to comply with the conditions of the sale in relation to security or otherwise, but this court does not pretend to specify all the causes which would justify the chancellor in withholding confirmation ; and after an order of confirmation the court would have the power for proper cause, to set aside the order made during the same term, and to set aside the sale for similar causes that would have justified a refusal to confirm in the first instance ; but after the term has passed at which the order of confirmation has been made, *held*, the power of the court over the subject-matter has ceased, unless the purchaser at the sale was a party to the suit in which the decree for the sale was originally made, and that suit be still pending in the court ; in such a case the court would still have the parties before it.

The order of the court confirming the sale, is a judgment of the court by which the rights of the purchaser to the property has been fixed and determined by the appropriate tribunal. · *Held*, that equity and sound policy alike dictate that the judgment should be equally valid, and possess the same force and effect of other decrees or judgments, by which the rights of persons are adjudicated.

Before the confirmation of the commissioner's report, the whole subject matter is *in fieri*, and under the control of the court, subject to the exercise of sound discretion, in regard to each party having a right to move or resist

a confirmation, and when a motion is made to confirm, a day is assigned, within which a party objecting to a confirmation could attend and show cause against it. *Held,* if he does not do so, and he sustains any injury in the confirmation, it is an injury which his own *laches* has produced, and against which sound policy requires that the court should not relieve him.

It is a principle pervading the whole body of the jurisprudence of this state, that where a party has an opportunity of presenting his claim properly before the appropriate tribunal for relief, that it is too late after the question has been adjudicated against him to ask that the judgment against him be set aside for any causes which existed at the time, and were known to him, or which by reasonable diligence he might have ascertained. *Held,* that where a commissioner's sale has been confirmed by the chancery court, it is too late to apply at a subsequent term to set it aside for any causes which existed at the time of the confirmation, and which were known to the party, or which by reasonable diligence he might have ascertained, unless fraud or inevitable accident prevented him.

Cases may arise, where a party did not know at the time of confirmation, or was prevented by accident or other good cause from exhibiting, if he did know the causes for which confirmation of the sale should have been refused and the sale set aside. *Held,* that in such cases he should not be and is not deprived of relief, for the same principle which authorizes a court of equity to relieve against an iniquitous and unconscientious judgment would apply to this cause, which would justify relief as in the latter case ; but whether the applicant should be relieved by petition or in a more formal way by bill, depends upon the situation of the case and the parties to it.

The proper course to pursue is, to apply by petition when the original suit in court, and the purchaser at the sale is one of the parties to the suit, and continues to hold the property : but where the original suit is determined, or the party who purchased at the commissioner's sale was not a party to the original suit, then the proper practice is to apply by bill ; and though the original suit is undetermined, and one of the parties thereto was the first purchaser, yet if other persons not parties to that suit have acquired an interest in the property, the proceeding should be by bill.

The equity jurisdiction of the circuit is limited by our constitution to "all cases where the value of the thing or demand in controversy does not exceed $500, also in all cases of divorce and for the foreclosure of mortgages; " and this court having heretofore held, that the circuit courts having jurisdiction to decree the foreclosure of mortgages, must have power to watch over the execution of its decrees, and to regulate all proceeding under them until the case is finally disposed of. *Tooley* v. *Gridley,* 3 S. & M. 493, cited and confirmed.

The power to set aside a judgment or decree, under such circumstances, is an original power pertaining to a court of equity, and circuit courts can only exercise it by virtue of possessing the power of a court of equity ; but we have seen that this jurisdiction is limited by the constitution to cases where

the amount in controversy does not exceed $500, to the foreclosure of mortgages and cases of divorce. *Held*, that the circuit court does not possess the power to set aside a commissioner's sale and an order of confirmation after the term, when the property in controversy exceeds $500, because that amount is beyond its jurisdiction.

The causes shown are not sufficient to authorize this court in setting aside the sale, for if the circuit court erred in its decree on the subject, the appellant should have taken an appeal before the sale, and had his rights adjudicated by the appellate court, and no sale would have taken place, but he chose to wait till after the sale before appealing. *Held*, that it will not do to complain of a result, however prejudicial, caused by his own negligence.

The action of this court reversing the decree of the circuit court, in relation to the distribution of the proceeds of the sale, did not in any way affect the sale itself or the rights of purchasers. *Held*, that the case was not reversed for any error in directing the foreclosure of the mortgage or the sale, but for an error in relation to the fund the sale was expected to realize.

On the 4th March, 1842, Herrod filed his bill in chancery in the circuit court of Madison county, to foreclose a mortgage made by S. D. Livingston, to secure the payment of certain notes, one of which was held by Herrod, and the others were held by Henderson, and Livingston and Henderson were made defendants in the bill. At May term, 1843, an account was taken by order of the court, showing the amount due Herrod, and a decree was made for the sale of the lands mortgaged, on a credit of six months, the purchaser to give bond and security bearing interest at eight per cent. from its date until paid ; and that on the payment of the purchase-money the commissioner should execute a deed, the proceeds of the sale to be applied first to the payment of the sum due Herrod, and the balance, if any, to the notes held by Henderson. On the 17th July, 1843, the commissioner sold the lands to W. Drane for $912, and took his bond and security payable to Herrod six months after date, and on the same day of the sale executed a deed to Drane, and at the November term, 1843, reported the sale to the court. Before the bond for the purchase-money fell due, and on the 12th January, 1844, Henderson sued out his writ of error to reverse said decree, and executed supersedeas bond, and *supersedeas* issued suspending all proceedings in the case. Said decree was afterwards reversed by the high court of errors

and appeals, and it was adjudged by said court that Herrod was not entitled to priority of payment, but that he and Henderson were to come in on equal terms for their proportions of their respective debts. See *Henderson* v. *Herrod*, 10 S. & M. 630.

On the 19th January, 1844, and after the issuance of the *supersedeas*, Drane conveyed the lands to Mason E. Sanders. Said deed purports to be made to Sanders as a creditor of Livingston, the mortgagor, in virtue of an assignment to him by Herrod of the debt secured in the mortgage and decree, and under the provisions of the " redemption law." Sanders afterwards, on the 8th October, 1845, executed a deed for the land to Daniel J. Sample, who is since dead, intestate, leaving a widow and no child, but certain named heirs at law, who are not residents of this state.

The petitioner then represents, that great injury will be worked to him, if the commissioner's sale is allowed to stand, because the lands were sold at a grossly inadequate price, being worth at the time $4000, when they sold for only $912, and because the decree under which the sale was made, not allowing any of the money arising from the sale to be paid to Henderson until the whole of Herrod's claim was paid, Henderson was thereby precluded from fair competition in bidding at the sale against Herrod, who would not be required to pay money ; that Drane was the solicitor and attorney for Herrod in said proceedings, and purchased said land for Herrod's benefit, or for Sanders, who was the real complainant in interest; and that there was at the time an understanding between Drane and Herrod or Sanders, or both, that the land should afterwards be conveyed to Herrod or Sanders ; that Drane never paid any money on account of the purchase, but on the day the bond for the purchase-money fell due, and after the issuance and service of the writ of error and supersedeas, Drane obtained said bond from the clerk of this court, who was also the commissioner who made the sale, and then entered satisfaction thereon, dating the same back and no money paid.

The petitioner submits that the sale to Drane should be set aside and declared void ; that neither Sanders nor Sample can

37*

claim to be *bonâ fide* purchasers without notice, and are not protected, for reasons hereafter to be insisted on in argument.

The petitioner prays for *subpœnas*, &c., and that said several sales and deeds be set aside, and a re-sale of the property decreed by this court on fair and equitable terms, and he offers to advance the sum of $3000 on the sum bid by Drane at the former commissioner's sale, &c.

The petition is filed in the same case as a part of the original suit for the foreclosure of the mortgage.

A *pro confesso* was regularly taken as to all the defendants, except Herrod and Drane.

Herrod and Drane's joint answer admits the statements of the petition as to filing the original bill, the decree, the sale to Drane, execution of the deed to him, his giving bond, &c., and that said sale was reported for confirmation, and alleges that it was duly confirmed as appears of record ; admits that a writ of error bond was executed as alleged, but denies all knowledge of the existence of the bond and *supersedeas* and service of the citation, until after these defendants went into the clerk's office and entered satisfaction upon said sale bond, and about the time they so entered satisfaction, the commissioner informed them that a writ of error had been or would be sued out, and on the same day the citation was served on this respondent, Herrod.

Admits the execution of the deed by Drane to Sanders, and states that Herrod, after the commissioner's sale, applied as agent of Sanders to redeem or purchase said land on the 4th September, 1843, from Drane, and Drane executed a written agreement transferring his bid to Sanders, and afterwards executed the deed to Sanders. Admits that Sanders executed a deed to Sample on the 8th October, 1845, who died, leaving the heirs named in the petition. States that Sample's heirs will be injured if the sale is set aside, as he has put valuable improvements on it since his purchase, which have given at least one third its value ; that at the time Drane purchased no land in the county would have sold on a credit of six months, at public sale for much more than this tract did per acre ; that Henderson knew of the commissioner's sale, but would not bid

for the property; said sale was conducted in all things fairly and openly, and Drane's bid was the highest the commissioner could get. Denies that the land was worth any thing like $4000.

Admits that Drane was Herrod's attorney in obtaining the decree, for which Herrod was to pay him $300, and the object of Drane in buying the land was to secure that sum and the costs he had expended in the suit, and also to prevent the property from being sacrificed, and with the view, if said Herrod desired it, of permitting said Herrod to have it upon payment of the amount due to this respondent Drane. Said Drane had the notes of Herrod due to Sanders as administrator, of one Felts for collection; Herrod desired the proceeds arising from said sale, and also all that could be realized from said decree, should be paid over to said Sanders, administrator, and for this reason applied, by the consent and as agent of said Sanders, to Drane, to secure the value of said land to Sanders upon payment to Drane of the amount due him. Drane, at the time he became the purchaser, had no understanding whatever with Sanders. That Sanders caused to be paid to Drane $400 due him in the fall of 1843, and Drane was then considered released from his bond for the purchase-money; Herrod gave Drane a written release from said bond in the fall term of court 1843, and Sanders, from the time of the execution of the written agreement transferring his bid to Sanders, was considered the true owner of the land; that Sanders gave Herrod a credit on the claims he held against Herrod, for the amount of money paid or to be paid on a resale of the land. They state that Sanders, through his agent Herrod, sold the land in November, 1843, to Sample, who shortly afterwards went into possession, and so continued until his death. Sample paid down $400 at the time of his purchase; agreed to and did assume to pay $800, for which Herrod was bound, and agreed to become surety for Herrod, and to pay another debt of $400; and for the balance amounting to about $2400, Sample gave his notes to Sanders, who yet holds them as these respondents suppose.

Admits that Drane paid on the purchase no money except the costs; $300 however was due him, and the costs paid by

him as aforesaid. Said amount was paid Drane in the fall of 1843 by Sample, for Sanders, and Herrod then gave Drane a release from his bond for the purchase-money.

Admits that satisfaction was actually placed on the record after the date of the writ of error bond, but at that time respondents did not know it had been given, and the bond for the purchase-money was paid long anterior to giving said (writ of error) bond. Sanders was considered the purchaser of the land, and had sold it to Sample, who was and had been in possession for some time before the writ of error was sued out.

Demurrer to the relief sought, &c.

The depositions of William P. Anderson, Lovick Lambeth, and Dr. William M. Reid, who were planters, residing in the neighborhood of the land, and well acquainted with it, prove that the land was worth, and would have sold about the time of Drane's purchase at the commissioner's sale, for at least seven dollars per acre, thus making the six hundred and eight acres worth upwards of $4200.

William Montgomery, who was the commissioner who made the sale, and also circuit clerk, states as follows: The receipt on the bond of Drane for the purchase-money, and written under the bond, was written by Drane and signed by Herrod in my presence, on the 17th January, 1844. No money was paid to me, nor in my presence, except the costs which were paid by Drane and Herrod, mostly by Drane, in January, 1848; thinks it probable, that if the writ of error had issued when Drane and Herrod came into his office to enter satisfaction on the bond, witness told them of it.

When the petition came on to be heard in the circuit court, a motion was made to set aside the sale of the mortgaged premises.

The court below dismissed the petition, and refused any relief whatever to Henderson, and thereupon the case is brought to this court.

A. H. Handy, for plaintiff in error.

I. As to the point of jurisdiction.

The record shows that the petition was not an original suit,

but a mere parcel and continuation of the original suit to foreclose the mortgage, with additional parties who had become involved in the subject-matter of the suit, the mortgage premises. At the time of filing the petition, the original suit was still pending in Madison circuit court, which distinguishes it from the case of *Hill* v. *Richards,* 11 S. & M. 194. For by the decree of this court reversing the original decree, the suit was remanded for a new decree, which has never been entered, and the cause was, therefore, duly in court undisposed of.

It was a suit for the foreclosure of a mortgage, of which the circuit court confessedly had jurisdiction; and having jurisdiction of the subject-matter, that court could properly exercise it for all purposes growing out of, or necessarily connected with, the suit, so long as it was in court. 1 Story's Eq. Jur. § 7.

It is clear that the supreme court of chancery could not rightfully have taken jurisdiction of this case on a bill filed setting forth the facts contained in the petition. 3 S. & M. 493. This authority fully shows that the circuit court had jurisdiction, and that no other court could take jurisdiction, because no other court could undertake to interfere in the foreclosure of a mortgage for which a suit was then pending in a court of competent jurisdiction, to be exercised not only as to the principal object of the suit, but also as to its incidents.

It being clear, then, that by the decree of reversal and remanding the cause, it was still pending when the petition was filed, and that the circuit court had jurisdiction of the subject-matter of the original suit, the question is, Had it not jurisdiction to set aside the sale and to order a re-sale for reasons shown?

As to Herrod and Drane, there cannot be a question that the court had jurisdiction to set aside the sale and to order a re-sale. Drane was the purchaser of the property, in form, though for the benefit of Herrod, who was the complainant in the mortgage suit, and Sanders the beneficiary of Herrod's interest in it. As to the parties, there will scarce be a question; and as to the purchase at the sale under the decree, there can equally be no question. " A purchaser at mortgage

sale under decree, is subject to the jurisdiction as a party to that suit in all matters connected with the sale, or relating to the character of the purchase." 2 Paige, Ch. Rep. 339; 3 S. & M. 493; *Tripp* v. *Cook*, 26 Wend. 156; 2 Bland. Ch. R. 629.

So far, then, as Herrod the complainant, and Drane the purchaser, are concerned, it is manifest that the circuit court had jurisdiction; that it is the only court that could give the relief sought or any adequate relief in the premises, 3 S. & M. 493; and that a petition was the proper mode of proceeding, see same case, and 26 Wend. 156.

Now we insist, that if, upon the merits of the case as made out, the sale should have been set aside as to Drane and Herrod, the decree of the court below dismissing the petition was erroneous, and must be reversed, whether that court had jurisdiction of the petition as to Sanders and the subsequent purchasers or not.

But we submit that the circuit court could properly exercise jurisdiction as to all the parties. Suppose that court should have thought fit to set aside the sale and order a re-sale, would not Sanders and the subsequent purchaser have been directly interested in the matter? And all persons interested in the mortgage premises are necessary parties. 3 Powell on Mortg. 963, note 1; Ib. 988. If they had become purchasers *pendente lite*, they were not necessary parties, because they could claim no protection, being purchasers *pendente lite*. 3 Powell, 988, note 1; 5 John. Ch. Rep. 96. Yet they could not complain at being made parties under such circumstances, and being enabled to defend their rights in that forum. And it is worthy of remark, that they have made no objection to the jurisdiction, the only objection on that ground being raised by the answer of Herrod and Drane. And we submit that it is incompetent for them to raise the question of jurisdiction as to other parties.

If Sanders and the subsequent purchaser were not purchasers *pendente lite*, (and they do not allege that they were,) then they were general incumbrancers, claiming title or interest in the mortgage property, and therefore were necessary parties. 3 Powell, *supra*. And the court in ordering a re-sale of the

land, would have found it encumbered by these claims. It was necessary, in justice not only to these incumbrancers, but also that the property might be disembarrassed of them upon a re-sale, to inquire into and dispose of them. The court having jurisdiction of the property in the mortgage suit, was fully vested with jurisdiction to dispose of all questions incidentally connected with it, and affecting the sale of the mortgage premises. " The circuit court, having jurisdiction to decree the foreclosure of mortgages, must have power to watch over the execution of its decrees and to regulate all proceedings under them, until the case is finally disposed of." 3 S. & M. 514.

Although, therefore, it appears clear to us, that for all that appears in the record, the circuit court had jurisdiction as to these subsequent purchasers, yet it is sufficient for our present purpose that it had jurisdiction as to Drane and Herrod; and if the decree below is erroneous upon the merits of the case as to them, it must be reversed. We think that the decree should be reversed as to all the parties; but if the court thinks differently as to Sanders and Sample, the decree will be reversed as to Drane and Herrod, a re-sale ordered, and the rights of Sanders and Sample left as if they had not been made parties; though clearly the most ample justice would be done by disposing of the whole case.

II. As to the merits of the case.

1. The original decree was void for uncertainty, in not declaring the amount due Henderson, 2 How. 649; 5 S. & M. 545; and being an entire thing, if void in part, it is void *in toto*, Bac. Abr. Error, M. 1; 5 Wend. 161; 6 Pick. 232; 12 John. R. 434.

But it is said, that this decree has been changed and modified by the decree of this court, in one particular only, *i. e.*, the appropriation of the proceeds of the sale; that in every other respect the decree is affirmed, which operates as an affirmance of the sale made under it, that this modified decree of this court is the only one now of force; and that it was incompetent in this case to impugn the decree of this court in the court below.

The whole force of this view is destroyed by reference to the decree of this court. After reciting the error in the decree " in allowing the appellee, Herrod, priority of payment out of the proceeds for which the mortgaged premises might sell," (not, had already sold, as would have been the language, had the intention been to affirm the sale,) and deciding that Henderson's claim is entitled rateably with Herrod's, the decree proceeds : " Wherefore for the error aforesaid, the decree below is reversed, and the cause remanded to the court below, and a decree ordered to be entered conformably to this order." Two things are here done: 1st, the decree is reversed; 2d, the cause is remanded to the court below, with directions to enter another decree, according to the decision, that Henderson's claim was entitled rateably with Herrod's of the proceeds for which the land might sell, &c. So far, then, from there being now a decree of this court amending the original decree, and both constituting a perfect decree disposing of the whole case, it is manifest that the reversal utterly annuls the original decree, and that this court gave no other decree but that of a reversal of the old decree, with directions to the circuit court how to enter a new decree.

It is clear, that the decree of this court had no reference whatever to the sale made under the original decree. That matter was not presented by the record, and was in no wise considered by the court. But if this court could have had any reference to the matter of sale of the mortgage premises, it may have contemplated a new sale ; for otherwise the court would have proceeded to render the decree which the court below should have rendered, and to distribute the proceeds of sale already made between Henderson and Herrod. This argument has much more force in it than the argument that the court confirmed the sale in their decree of reversal, though we think the court intended to make no reference to the question of sale, simply because the court could not know that any sale had been made.

Then, according to the authorities, and taking the distinction between void and erroneous judgments, this sale is void had it been made even to a stranger, and if the sale was made

Henderson *v.* Herrod et al.

before the decree of this court was rendered. If the decree below was void, not merely erroneous, at the time of the sale, no rights could be acquired under it, and the purchase of Drane was a nullity, so that no subsequent judgment of this court could render it valid.

2. The purchase of Drane, whether made for his own or Herrod's benefit, should be set aside; 1st, because, he was solicitor in the cause, and chargeable with notice of irregularities; and 2d, as solicitor, he was clothed with the character of trustee for all parties interested in the fund. We contended that the reversal of the decree avoided a sale made under it to any one chargeable with notice of the error or defect, and that Drane was so chargeable.

The doctrine of the English books of practice is, that on a writ of *elegit* executed by putting the plaintiff in possession of land and goods of the defendant, and the judgment is afterwards reversed, both land and goods shall be restored. Counsel says, the reason of this is because there was no sale; that the plaintiff was put in possession only until satisfaction of the judgment should be obtained, and that the reversal of the judgment necessarily destroys the right of possession. This is a mistaken view of the matter. The writ of *elegit* is a species of common law execution, by which the goods of the defendant are delivered to the plaintiff at a valuation by the sheriff, and if they be not sufficient, a moiety of the defendant's land was extended, and the plaintiff put in possession of the balance for so long a time as the sheriff might reasonably judge would be sufficient to satisfy the judgment. Now certainly as to the goods delivered at valuation, there was a sale, the title was changed, and yet on reversal the defendant was entitled to restitution. Tidd's Pr. (2d Amer. from 8th Lond. ed.) 1074, 1075; Ib. 1246.

Where a judgment is reversed, the parties are placed in the same situation in which they were before its rendition. The rights of strangers, acquired under it *bonâ fide* and while it was in force, are not affected, if the judgment be merely erroneous. This doctrine is fully sustained by authority, and it rests on the ground that a party who has obtained a wrong-

ful judgment shall not obtain any advantage from it, which he might do if allowed to purchase and retain the property of the defendant; whereas a stranger, who has had no agency in obtaining the judgment, and is only required to know that there is a judgment without being bound to inquire into its merits, is protected in his purchase. The rule is laid down in *Dater* v. *Troy Turnpike Company*, 2 Hill, (N. Y.) 629, thus: " Where one acquires title to land or goods under a judgment, which is afterwards reversed, his title is at an end, and the thing must be restored in specie. An exception is, where the title has been thus acquired by a stranger or third person."

We insist that, as to parties and privies, there is no difference between the effect of a void judgment and one merely erroneous in relation to the matter under consideration. Conceding, for argument's sake, that the original decree in question was merely erroneous, still this sale must be set aside, or, to speak more properly, must be considered as already set aside by the reversal in this court. For whether Drane purchased for himself or for Herrod, the sale must be avoided. If for himself, he was the solicitor who drew up and obtained the erroneous decree, and as such is chargeable with notice of every defect, error, or irregularity which could cause its reversal. *Catlin* v. *Simonds*, 2 Caine's R. 61.

But it is admitted that Drane purchased for the benefit of Herrod or Sanders, and therefore, for all substantial and equitable purposes, the purchase is to be regarded as having been made by Herrod himself, the plaintiff in the cause. His title and interest fall with the reversal of the decree. But it is said this doctrine can only apply as between Herrod and Livingston, the mortgagor ; that Livingston alone has a right to ask restitution, this being a contest, not about the land, but about the proceeds of the sale. But there is no contest here about the proceeds of the sale. This court has settled that point whenever a proper sale shall be made. It is a contest about land, and both Henderson and Herrod have a " claim " to it to secure their debts. In truth, the legal title is in them as mortgagees, Livingston having only the equity of redemption. When the decree below was reversed, the title by sale under

it was at an end, so far as Herrod was concerned, and the original legal title 'of Henderson as mortgagee was restored, and he now asks that this may be made available to him by a new sale. The true principle is, that when a judgment or decree is reversed, the rights of the parties to it are restored according to the circumstances of the case, whether they consist in specific property or a mere interest in the property involved in the suit; for otherwise, the sale to Herrod could not be disturbed after the reversal, however fraudulent may have been the conduct of himself and Drane in the transaction.

We insist that if Drane purchased for himself, he occupied such a relation of trustee of all the parties to the suit as disqualified him from purchasing. To prevent fraud by taking away all temptation to commit it, courts of equity have held that purchases made by trustees of all descriptions and however fairly, may be set aside, as of course, upon the application of any party interested. The authorities cited by us, show that after the decree, Drane occupied this relation to Henderson, by means of his connection with, and power of control over, the trust fund and property. *Davoue* v. *Fanning*, 2 J. C. R. 252; *Michoud* v. *Girod*, 4 How. (S. C. U. S.) 555; 6 Ves. 630, note 1, (Sumner's ed.); 8 Ib. 337, 343; 10 Ib. 385; and *York Building Co.* v. *McKenzie*, cited in 2 J. C. R. 269, which is strongly in point.

3. Although the sale had been confirmed, the court below had the power to set it aside for " any injurious mistake, misrepresentation or fraud," while the case remained in court not finally disposed of. *Anderson* v. *Foulke*, 2 Har. & Gill, 346; *Andrews* v. *Scotton*, 2 Bland. Ch. Rep. 629; *Tripp* v. *Cook*, 26 Wend. 143.

This last case is strongly in point to the present; there was gross inadequacy of price in that case; so there is here. The property there was afterwards sold for six times what was bid for it at the sale under the decree. Here it was sold at quadruple the price it brought at the sale under the decree. There was a mistake in that case which prevented an interested party from bidding at the sale; and there was a mistake

in the decree in this case, which prevented Henderson from entering into fair competition in the biddings with Herrod; for while Herrod could bid without the prospect of paying any money, Henderson, under the subsisting decree, would have been compelled to pay the full market value of the land in cash before any of the proceeds could be applied to his claim. This decree, then, had the same effect as the "injurious mistake" in the case in Wendell, to prevent the party complaining from bidding at the sale.

But it is said the mistake in that case was one of fact, and this one of law, against which there is no relief. We reply that this was no mistake of Henderson, but of the court, and of the very parties who are now endeavoring to hold on to the advantages they have obtained by it. And to whatever extent the doctrine contended for has been carried, we think it has never gone so far as to make a party responsible for a mistake of law committed by a court rendering a judgment adverse to his interest, and at the same time for the mistake of his adversary who induced the court to commit the mistake. If, at the time of the sale, there had been no decree of the court as to the appropriation of the proceeds, that being an open question upon which the respective parties could have exercised their own judgments, or submitted to the advice of counsel, and Henderson, for a mistake of his rights, had refrained from bidding, the court, according to the doctrine contended for, might well have refused his application for a re-sale. But this case is widely different, and the distinction we have presented is a full answer to a case supposed of a plaintiff whose motion to apply money made on several executions to his execution, has been overruled, and the supreme court afterwards reverses this decision, and the plaintiff afterwards applies to the court to set aside the sale, on the ground that he would have given more for the land if he had known he was to receive the amount it sold for. This example bears no analogy to this case, because here the erroneous decision of the court was before the sale and caused the injury to the party; whereas, in the case put, the sale had been made before the erroneous decision, and of course could not have been affected by it.

But we do not admit that in no case will courts of equity grant relief against mistakes of law.   Mere ignorance of law is not ground of relief; but mistake of law founded on the misrepresentation of the other party, is ground of relief.   And here these parties, especially the solicitor for Herrod, misrepresented the law to the circuit, and induced the mistake in the decree.   See Story, Eq. Jur. 132–156.   In South Carolina, it is well settled that a mistake of law is ground of relief in equity.   2 McCord, Ch. R. 455; 2 Bailey, 623; 1 Hill, Ch. Rep. 250.

In the case of *Tripp* v. *Cook*, the court says, in reference to the acts of the purchaser, "His acts and declarations, although not intentionally deceptive, were such as to support the mistake."   So here, Drane and Herrod are inseparably identified with the "injurious mistake."   It was at their instance that the mistake was made.   Their conduct, although not intentionally deceptive, was such as to support and encourage the mistake; and shall they be allowed to enjoy the unjust gain which they have obtained by means of a mistake which they were directly instrumental in causing?   Every principle of equity and good conscience forbids it.

Relief is not claimed here on the ground that Henderson committed a mistake in the law as to his rights.   The complaint is, that the court made the mistake which resulted to his injury.   The court has been made the instrument of injustice in the hands of Herrod and Drane, to work injury to Henderson, and by its erroneous decree has so far afforded an unfair and unconscientious advantage to them in the purchase.   What now is the plain duty of the court?   To repair the injury done, by setting aside the sale to Drane, and ordering a re-sale.   To allow the sale to stand, would be to allow the unjust consequences of the mistake to continue, and those who induced it, to enjoy the benefits of their own wrongful acts and unconscientious advantage.

*Clifton*, for Herrod.

This cause grew out of the case in 10 S. & M. 630, between Henderson and Herrod.

38*

Henderson filed a petition in the circuit court of Madison county, praying that court to set aside the sale of the mortgaged premises, which sale, on the bill there filed to foreclose the mortgage, had been made and confirmed long before that case was brought to this court, and reversed.

It is called a petition, but the form of the proceeding throughout its whole course is that of a suit in chancery.

The defendants, Drane and Herrod, in their answer claim the benefit of a demurrer.

1. The jurisdiction of the circuit court is limited to the foreclosure of mortgages. It has pronounced a decree in this case for that purpose. A sale has been made under that decree, which has been reported and confirmed. The title acquired at that sale has passed into the hands of third persons. This petition and the proceedings under it, cannot be part of the original suit, because that was finally ended by the decision of this court in 10 S. & M. 630; *Hill* v. *Richards*, 11 S. & M. 200; *Stark* v. *Lewis*, Opinion Book, 78; 10 S. & M. 120.

If they are part of it, how could the circuit court, in exercising a special and limited jurisdiction, call new parties before it who are wholly unconnected with the facts which called that jurisdiction into exercise? and how can it undertake to recall and annul a title, by the confirmation and approval of the change of which, from the mortgagor to the purchaser at the sale it decreed, its powers, as to that title, were exhausted?

2. The object of the petition is to set aside the sale, in order that a re-sale may take place; and I shall show that if the court had jurisdiction, the petitioner could not be successful upon any of the grounds taken in the petition, or in the argument of his counsel.*

Mr. Justice YERGER delivered the opinion of the court.

In 1842, Barnabas Herrod, by Wesley Drane, his solicitor,

---

* The counsel here entered upon his argument, in the course of which he discussed all the points raised by the opposing counsel, and reviewed the authorities cited at length.

The reporter cannot abridge the argument without danger of doing injustice to it, or the necessity of more labor than he can undertake to perform.

filed a bill in the circuit court of Madison county, against George W. Henderson, Lemuel D. Livingston, and Albert G. Forney, for the purpose of foreclosing a mortgage executed by Livingston, on a tract of land to secure three promissory notes payable to Albert G. Forney. The bill, among other things, alleged that Herrod was the assignee of Forney of the note first due, and that Henderson was the holder of the two others. Such proceedings were had in the cause, that at the May term 1843, of the court, a decree was made foreclosing said mortgage, and in default of payment of the amount due by Livingston, ordering a sale of the land upon six months' credit, the purchaser giving bond, &c.; the proceeds of the sale to be applied to the payment of the amount due to Herrod, and if any balance remained the same was to be paid over to George W. Henderson. William Montgomery was appointed a commissioner to sell the land. On 17th day of July, 1843, Montgomery sold the land under the decree, and Wesley Drane became the purchaser for $912, who gave the bond required by the decree, and a deed was executed to him by the commissioner. At the November term, 1843, the commissioner made a report of the sale, &c.. to Drane, and the sale was confirmed by the court. On the 12th of January, 1844, Henderson took out a writ of error to the high court, and a *supersedeas* was on that day issued. At the January term, 1847, of the high court the cause was decided, and it was held by that court, that " There was error in the decree of the circuit court allowing Herrod priority of payment out of the proceeds for which the mortgaged premises might sell, and that the notes held by Henderson for the balance due on them, should share with the one held by Henderson, and should be paid rateably with it out of the proceeds of the mortgaged premises; whereupon, for the error aforesaid, the decree below is reversed and the cause remanded to the court below, and a decree ordered to be entered conformably to this order." A certificate of this order was issued from the high court, and on the 25th of February, 1848, George W. Henderson, the appellant in this court, filed a petition in the circuit court of Madison county, to set aside the sale of the land made to Drane by virtue of the de-

cree, alleging as a reason therefor, that the price paid by Drane was not the value of the land; that Drane purchased in fact for Herrod, and being a solicitor in the cause was a purchaser with notice; that he never in fact paid any money on account of his bid, but that at the direction of Herrod the commissioner entered satisfaction of the bid, and surrendered the note; that this entry of satisfaction was made after Herrod and Drane had notice of the writ of error and *supersedeas;* that Drane, on the 19th of January, 1844, and after notice of the writ of error, conveyed the land to Mason E. Sanders, a creditor of Livingston, and who claimed the right as such to redeem by virtue of the provisions of the redemption law; that on the 8th of October, 1845, Sanders conveyed to Daniel J. Sample, who died in November, 1847, in possession of the land, leaving a widow and no children, but brothers and sisters, his heirs at law.

The petition further stated, that the land was worth about $4000 at the sale, but owing to the decree then in force, which gave to Herrod the whole proceeds of the sale till his debt was extinguished, petitioner did not occupy such a position as would have justified him in bidding, especially against those who would not be required to pay money. An offer is made to advance $3000 on Drane's bid, and a prayer is appended that the sale to Drane be set aside, and a re-sale ordered. Drane, Herrod, Sanders, and the heirs of Sample are made defendants, and subpœnas, &c., regularly issued, &c. The circuit court dismissed the petition; from which order Henderson has appealed.

The counsel for both parties have filed able and elaborate briefs, and as the case presents some questions of importance in relation to the practice of the chancery court, and the jurisdiction of the circuit court in matters of equity, we have endeavored to give it that examination which the arguments of counsel and the importance of the case seem to demand. Upon the facts contained in the record, three questions arise, which we deem it necessary to notice.

I. Can a court of equity in this state, after confirmation of a sale made by a commissioner, set that sale aside at a subsequent term? If so, for what causes, and in what way

should the application be made, whether by petition or original bill?

II. If a court having general equity jurisdiction possesses this power, can a circuit court exercise it in cases where the property exceeds the value of five hundred dollars? If it can exercise such a power at all, can it be done where other parties than those to the original suit or the purchaser at the sale are interested in the premises?

III. If such a power exists in the circuit court, do the facts presented by this record make a case proper for its exercise?

1. Sales by a commissioner under decrees of the chancery court, should be regulated very much by the same rules which apply to execution sales at law by a sheriff. The object in each instance is the same, namely, the execution of the judgment or decree of the court, and the interests of suitors as well as public policy demand that the sales should be in each instance alike certain and obligatory, and that the title which a purchaser obtains in either mode, should possess a similar degree of validity and force. It is true this court has held, that until a commissioner's sale has been confirmed, it is not valid; yet it has also decided, that the parties to the sale may act in such a manner as to give to the sale the effect and validity of an order of confirmation by the court. 3 S. & M. 493; 4 Ib. 210.

The chancellor, in refusing to confirm a sale, should exercise not an arbitrary, but a sound legal discretion. What would be sufficient grounds for a refusal to confirm, must depend in a great degree upon the circumstances of each case. Among causes which have been enumerated as sufficient for that purpose, are fraud, accident, mistake, or surprise in relation to the sale or the time of sale, or the title of the property sold, or the failure on the part of a purchaser to comply with the conditions of the sale, in relation to the security or otherwise. But, of course, we do not pretend to specify all the causes which would justify the chancellor in withholding confirmation. In England, it was the practice of the court of chancery to withhold a confirmation for inadequacy of price, or because a better price was offered afterwards than the bid at the sale. This

doctrine has never, however, prevailed in this country; and in this state particularly such a practice has never been adopted. After an order of confirmation, we think the court would have the power for proper cause to set aside that order during the same term, and to set aside the sale for similar causes that would have justified a refusal to confirm in the first instance; but after the term has passed at which the order of confirmation has been made, we think the power of the court over the subject-matter has ceased, unless indeed the purchaser at the sale was a party to the suit, in which the decree for the sale was originally made, and that suit is still pending undetermined in the court. In such a case, the court would still have the parties before it; we do not say that an order of confirmation might not be set aside by petition at a subsequent time.

The order of the court confirming the sale, is a judgment of the court, by which the rights of the purchaser to the property has been fixed and determined by the appropriate tribunal; and equity and sound policy alike dictate, that this judgment should be equally valid, and possess the same force and effect of other decrees or judgments by which the rights of parties are determined. Prior to the confirmation, the whole subject-matter is *in fieri*, and under the control of the court, subject to the exercise of a sound discretion in regard to it. Each party has the right to move for or resist a confirmation. When the motion to confirm has been made, a day is assigned, within which a party objecting to a confirmation could attend and show cause against it; if he does not do so, and he sustains any injury therefrom, it is an injury which his own *laches* has produced, and against which sound policy requires that a court should not relieve him. This is no new doctrine in this court; on the contrary, the principle will be found to pervade the whole body of the jurisprudence of this state, that where a party has an opportunity of presenting his case properly before the appropriate tribunal for relief, it is too late, after the question has been adjudicated against him, to ask that the judgment against him be set aside for any causes which existed at the time, and which were known to him, or which by reasonable diligence he might have ascertained.

We therefore are of opinion, that when a commissioner's sale has been confirmed by the chancery court, it is too late to apply at a subsequent term to set it aside, for any causes which existed at the time of its confirmation, and which were known to the party, or which by reasonable diligence he might have ascertained, unless indeed he was prevented by fraud or inevitable accident of some kind from presenting them to the consideration of the court.

But cases may arise, where a party did not know at the time of the confirmation, or was prevented by accidental or other good cause, from exhibiting, if he did know, the causes for which a confirmation of the sale should have been refused, and the sale set aside. In such a case, he should not be, and is not deprived of relief. The same principles, which authorize a court of equity to relieve against iniquitious and unconscientious judgments, would apply as well in this case as to relief against a judgment at law, and the same causes which would justify relief in the latter case would entitle him to relief in the former. Whether this application should be made by petition or in a more formal way by bill, depends somewhat on the situation of the case, and the parties to it. Chancellor Kent, in the case of *Codwise* v. *Gelston*, 10 Johns. R. 507, says, that " The precise line between cases in which a party may be relieved upon petition, and in which he must apply more formally by bill, is difficult to advise. Petitions are generally for things which are matters of course, or upon some collateral matter, which has reference to a suit in court. The mode of application depends very much upon the discretion of the court." In *Ex parte Bloomfield*, 1 Ves. jr. 453, the chancellor said, that the case must be put in the shape of a bill, because of its magnitude and importance. In the case in 10 Johns. 507, before referred to, Gelston was a party in the suit, and filed a petition to enforce a lien on a fund in the court arising in that suit, and Chancellor Kent said, " He was not a *novus hospes.* He had already been before the court, and his case was well known," &c. Applying the principles which may be deduced from these cases, we believe the correct practice in cases of this kind to be: 1st. To apply by

petition, where the original suit is still pending, undecided in the court, and the purchaser at the sale is one of the parties to that suit, and continues to hold the property 2d. Where the original suit is determined, or the party who purchased at the commissioner's sale was not a party to the original suit, then the proper practice is to apply by bill. 3d. Although the original suit is undetermined, and one of the parties thereto was the first purchaser, yet if other persons not parties to that suit have acquired an interest in the property, the proceedings should be by bill.

2. This brings us to the second proposition, that is, the jurisdiction of the circuit court in questions of this kind. The equity jurisdiction of that court is limited by the constitution to " all cases where the value of the thing or amount in controversy does not exceed $500 ; also in all cases of divorce and for the foreclosure of mortgages." This court heretofore held, in the case of *Tooley* v. *Gridley*, 3 S. & M. 493, that " A circuit court having jurisdiction to decree the foreclosure of mortgages, must have power to watch over the execution of its decrees, and to regulate all proceedings under them until the case is finally disposed of." This view of the law meets with our approbation, yet we think it is very far from establishing the rule, that it has the power after a sale has been made and confirmed under a decree of foreclosure, at a subsequent term, to set that sale aside. Of course, until a confirmation, it has full power to regulate the whole matter, to confirm or set it aside according to its discretion, and this as a consequence of the rule that no sale is valid till confirmation. But after confirmation and the expiration of the term, then, as before stated, the order of confirmation becomes a judgment or decree of the court in the subject-matter, and the rights of the parties have become fixed and settled by adjudication. To set aside an order so made is not necessary to the decision of the original suit for foreclosure, or to enable the court to execute its decree in that case, or proceed to a final disposition of that cause if undetermined. On the contrary, the act of sale and confirmation by the court constituted an execution of the decree. The order of confirmation being a judgment of the court, and the

term having passed at which it was made, it must stand until reversed, or unless vacated or set aside for fraud or some other cause, which will authorize a court of equity to interfere to set aside or vacate any other judgment or decree of a competent court. The power to vacate or set aside a judgment or decree under such circumstances, is an original power pertaining to a court of equity, and a circuit court can only exercise it by virtue of possessing the powers of a court of equity. But we have seen that this jurisdiction is limited by the constitution to cases where the amount in controversy does not exceed $500, to the foreclosure of mortgages, and divorce cases. We are therefore of opinion, that a circuit court does not possess the power to set aside a commissioner's sale, and an order of confirmation after the term where the property in controversy exceeds the sum of $500. This opinion is sustained by the decisions of this court in the analogous cases of sales made by the probate court, in which it was held, that the probate court has power to set aside a sale for fraud which has been made under its direction, when application is made at the term to which the report of sale is returned. But that it has not the power to do so at a subsequent term, because the power to set aside the sale cannot be regarded as in the course of the administration of an estate. The power to vacate a judgment order or decree on account of fraud, has uniformly been holden to pertain to a court of chancery. *Planters Bank* v. *Neeley,* 7 How. 96, 201; *Turnbull* v. *Endicott,* 3 S. & M. 302.

Of course, then, if the equity jurisdiction of the circuit court is limited to cases where the amount in controversy is $500, it cannot exercise the jurisdiction of a court of equity to vacate an order, judgment, or decree, in relation to property of greater value.

3. The settlement of the foregoing positions makes it unnecessary for us to examine at great length the third point presented by the record.

The appellant contends that the sale should be set aside, because this court reversed the decree of the circuit court in relation to the proceeds of the sale under the mortgage. It is not pretended, that this sale was irregular; that appellant

did not know where it was to take place, so that any thing was done to prevent the property from selling for its full value. But it is alleged, that it was worth more than the purchaser bid at the sale, and that appellant would have bid more but for the decree awarding the whole proceeds to Herrod, thus inducing the belief that he would have to pay the whole of Herrod's claim in the first instance, and he was thereby prevented from bidding. We do not think this a sufficient cause to set aside the sale. If the circuit court erred in its decree on the subject, he should have appealed before the sale, and have had his rights adjudicated by the appellate court. Had he done so, no sale would have taken place. But, as he chose to wait till after the sale, before appealing, it will not do to complain of a result, however prejudicial, caused by his own negligence. We do not think that the action of this court, reversing the decree of the circuit court in relation to the distribution of the proceeds of the sale, in any way affected the sale itself, or the rights of the purchasers at the sale. The case was not reversed for any error of the court in decreeing the foreclosure or the sale, but for an error in relation to the fund which the sale was expected to realize.

Let the decree be affirmed.