|      |     |
|------|-----|
| 4    | 321 |
| 103  | 433 |

## FOURNIER v. CURRY.

1. An execution issued on a judgment which the sheriff has discharged by paying the amount to the plaintiff in execution is not void but may be set aside by the defendant in execution as having irregularly issued. If he omits or declines to do so, no one else can take advantage of it.

Error to the Circuit Court of Marengo.

Detinue for a slave by the defendant in error against the plaintiff in error.

From a bill of exceptions taken pending the trial, it appeared that the defendant was the agent of one James S. Duval [of of Pennsylvania—that the slave sued for was purchased on the 17th February, 1834, by William B. Duval, son of James S. Duval, that the bill of sale was taken in the name of James S. and the purchase money paid by him, and that after the purchase the negro was placed on the plantation of James S. in Marengo county, where William B. resided.

It was also proved that on the 29th June, 1833, James S. Duval by his agent, by deed of that date leased to William B. Duval his plantation and slaves in Marengo county, for one year, renewable from year to year at the pleasure of the lessor, for the consideration of natural love and affection, and for the further consideration of two dollars, payable at the expiration of each year, which was recorded.

41

Several witnesses were examined who lived in the neighborhood of the plantation of James S. Duval, where William B. Duval resided, and proved that the latter used and controlled the property as his own, and acquired credit from the fact of having it in his possession, and that they never heard of the claim of the father to the property.

The slave sued for in this action was seized on the 11th April, 1836, by the sheriff, by virtue of an execution against Wm. B. Duval, and sold on the 2d May after, and purchased by the plaintiff, who had been the previous sheriff of Marengo county. There was proof tending to show that the plaintiff while sheriff had paid off the executions levied on the slave and afterwards had them issued and levied for his benefit.

The Court charged the jury that if they believed, from the evidence, that the claim of James S. Duval was an honest and fair one, and not intended to cloak or protect the property of William B. Duval from the payment of his debts, his title to the negro was good. But if the claim was founded in fraud, or James S. Duval had so acted in regard to the property as designedly to enable William B. Duval to commit a fraud upon his creditors, then the negro would be liable for the debts of the latter: and further, that although they might believe from the evidence, that the plaintiff, while sheriff, had paid off the sum due on the execution, yet that fact would not invalidate a purchase made by him under the alias executions.

The defendant by his counsel moved the Court to instruct the jury, that if they believed from the evidence that the purchase of the negro by James S. Duval, was fair and honest and that he paid the purchase money, he had the right to leave the slave in the possession of William B. Duval, for any period not exceeding three years without divesting his title by such possession. The Court admitted such to be the law, and so said to the jury; but the plaintiff not having contended that a three year's possession had operated on any title of James S. Duval, and the proof being contrary, the Judge remarked he would not say to the jury, that the principle applied to the case.

To the charges given, and the refusal to charge, the defendant excepted, and a judgment was rendered for the plaintiff, from which this writ is prosecuted.

The assignments of error question the propriety of the charges given and refused.

Lyon and Jones, for the plaintiff in error, insisted that the plaintiff having, while sheriff, paid off the executions in his hands, discharged the judgment, and that a purchase by him under the alias execution was void. [6 Porter, 432; 7 J. Rep. 426; 3 id. 434; 15 id. 443; 14 id. 87; 7 Cowen, 13; 4 Wendell, 485.]

That the charge asked for should have been given, and that the qualification annexed to it by the Court was, in substance, a refusal.

J. B. Clark and Manning, contra, contended that the motion for the charge, that if the plaintiff, while sheriff, paid off the execution, it could not be afterwards reissued, was not warranted by the testimony, and being abstract was properly rejected. [1 Ala. Rep. 584.] That admitting the sheriff paid off the first execution, that would not render the second void, but voidable merely, and that no one but the defendant in execution could take advantage of it.]

That the refusal of the Court to charge the jury in regard to the right to loan the property for three years without recording it, could not prejudice the defendant; because the case was put to the jury on the ground of fraud, and the property had not been three years in possession of the defendant in execution. In support of these views they cited 1 Porter, 144; 2 S. and P. 111; 6 Porter, 445; 9 id. 405; 1 Ala. Rep. 584.]

ORMOND, J.—In the case of Boren v. McGee, [6 Porter, 432,] we expressed the opinion, that the sheriff had no power to pay a judgment and keep the execution open for his own benefit. That the defendant in execution could not deal on equal terms with him, armed as he is with the coercive power of the law, and that therefore such a traffic was forbidden by public policy, and that such payment, so far as it related to the defendant in execution, was a discharge of the judgment, who had the undoubted right to arrest the process and stop its execution. The point was distinctly presented on the record and necessary and proper to be decided, and having again consid-

ered it, we are satisfied of its correctness, being supported by reason and well sustained by authority.

In that case the judgment was paid by the sheriff, the execution reissued and levied on the land of the defendant in execution, which was sold without objection by him. When the purchaser brought his action of ejectment, to recover the land, we held that the execution was voidable merely, and that the purchaser acquired a good title.

The principle to be extracted from that case is that an execution issued on a judgment thus discharged by the act of the sheriff is not absolutely void, but may be avoided by the defendant in execution; and that if he omits to do so, the purchaser acquires a good title under it. It is true that some stress is laid, in that case, on the fact that the purchaser was ignorant of the discharge of the judgment, but that was not a necessary element of the decision, which turned entirely on the question, whether the process was void or voidable.

In this case the objection is not made by the defendant in execution, but by a third person, and if it were conceded that the defendant in execution, without setting aside the process for irregularity, or the sale made under it, could raise this objection in an action by the purchaser, with notice that the judgment had been previously satisfied, it would by no means follow that such objection could be made by a stranger. For although the law forbids such dealings between the executive officer of the law and the defendant, in execution from the tendency of such acts to extortion and oppression, yet such an advance of money by the sheriff may not only be fair and honest, but may have been induced by the entreaties and promises of the defendant himself, and exclusively for his benefit. He may therefore not desire to avail himself of a privilege conferred on him by law for his protection, and if he does not interpose no one else can.

In Woodcock v. Bennet, [1 Cowen, 737,] it is said that the definition of voidable process is, that it stands good until reversed, and can only be reversed by a party to the suit.

In Jackson v. Bartlett, [8 Johns. 361,] where an execution had issued a year and a day after the judgment without revival by *sci. fa.* it was held to be voidable at the instance of the party only against whom it issued. The Court therefore did

not err in its instruction to the jury, that the purchase of the defendant in error, under the *alias* execution was not void.

The defendant also moved the Court to charge that a slave might be loaned in good faith for any period less than three years, without impairing the title of the owner, and without a registry of such loan. The Court admitted such to be the law, but informed the jury that the principle did not apply to the case, because three years had not elapsed since the loan was made.

It has been frequently held in this Court, that it is error for the Court to refuse a charge correctly asked, although it may afterwards give the same charge in substance, on the ground of its tendency to mislead the jury.

I incline to the opinion that the charge in this case comes within the influence of those decisions. Evidence had been introduced to show that the defendant in execution was supposed by his neighbors to be the owner of the slave in controversy, from having the possession, and acquired credit thereby. It was therefore vitally important to the defendant to satisfy the jury that he was in no legal default, and that the false credit which it seems the younger Duval obtained from the apparent ownership, was owing to the credulity of those who relied on delusive appearances. The injury to the defendant by the charge as given, was probably as great as if it had been refused. Nor can I understand with what propriety it could be said that the law referred to did not apply to the case, when it was by virtue of that alone that the possession of the younger Duval was consistent with title in the father.

But my brothers think the Court was justified in limiting the charge in the manner it did, and placing the question on the ground of fraud. From this it follows that there is no error in the judgment, and it is therefore affirmed.