## HUBBERT, AND ANOTHER, v. McCOLLUM.

1. In an action for the recovery of land, purchased under a *fieri facias*, against the defendant in execution, it is not allowable for the latter to impeach the deed by showing an irregularity in the sale and proceeding preparatory thereto; and the purchaser's knowledge of the manner in which the levy and sale were made, will not authorise the application of a different rule.
2. The irregular execution of a *fieri facias* may be corrected, or avoided by a seasonable application to the court from which it issued.

WRIT of Error to the Circuit Court of Fayette.

This was an action of trespass, at the suit of the plaintiffs in error, to try the title to certain tracts of land, particularly described in the declaration, as well as to recover damages of the defendant, by reason of the occupancy of the same, by him. The cause was tried upon the plea of "not guilty, and a verdict returned for the defendant, on which a judgment was rendered. From a bill of exceptions, sealed at the trial,

it appears that the plaintiffs read to the jury a judgment of the Circuit Court of Fayette, in favor of James Hogan, ex'r, &c. against, the defendant, and the plaintiff, Caple, for $3,655 66, and then introduced a writ of *fieri facias* issued thereupon, on which was indorsed a levy of the same on the lands in question, bearing date the 7th August, 1840. This levy was made by the plaintiff, Hubbert, the then sheriff of Fayette, although his office expired on the first Monday of August, 1840, the day on which his successor was elected. The execution was placed in the hands of Hubbert, in July preceding ; R. H. Poe, his successor, gave bond, and qualified on the 10th August, and shortly thereafter it was transferred to him.

Poe was introduced as a witness, and stated that when he received the *fi. fa.* with the levy thereon, he did not consider the levy to be legal ; consequently, he erased the name of Hubbert, wrote his own name under the indorsement, and adopted the levy as his own : that as it was not his custom to do so, he believed he did not go upon the land. On the execution it appeared as a part of Poe's return, that he sold the land to the plaintiffs on the 5th October, 1840—they being the highest bidders. There was evidence to show that Caple alone bid off the land, but after it was cried out he directed the sheriff to charge it to himself and Hubbert.

The court charged the jury that the levy by Hubbert was regular, and under it the land should have been sold ; that his successor had no right to erase his name, and until that levy was disposed of, no other could be made ; that the power to levy the execution was exhausted by what Hubbert had done, and it was not competent for Poe to adopt the act of his predecessor as his own : whereupon, the plaintiff excepted.

The plaintiff's counsel prayed the court to charge the jury, that the levy was merely voidable, and consequently sufficient to make their purchase and title good. Whereupon, the court charged the jury, 1. That a levy made by one who has no right to make it, is void ; but whether void or voidable, in the present case, is immaterial, as the defendant himself is seeking to avoid its effect. 2. That although a stranger might be protected in his purchase, when the levy and sale were unlawful,

yet the present plaintiffs did not stand in that situation—Caple being a defendant in the execution, and Hubbert having levied it, they were presumed cognizant of every thing that was done under pretence of its authority.

The plaintiffs' counsel prayed the court to charge the jury further, that if they believed that Caple alone purchased the land, and afterwards allowed Hubbert to participate therein, his title would be unaffected by any irregularity in the proceedings, unless he was cognizant of, and consented to it. In answer to which, the court instructed the jury, that although Caple was the actual bidder, if Hubbert was his partner, and had the same interest in the purchase, they both stood in the same situation, and whatever knowledge, or the want of it, would prejudice the one, would alike affect the other. For the refusal to charge, as prayed, as well as to the instructions given to the jury, in lieu thereof, the plaintiffs excepted, &c.

L. Clark, for the plaintiffs in error.—A purchaser, at a sale, under execution, is only obliged to take notice that there is a judgment, execution, and levy, *in fact*—he will not be prejudiced by any irregularity in the levy. The levy by Poe, from the indorsement on the *fi. fa.* appeared to be entirely sufficient; but if it was not, that made by Hubbert was regular, and the sale by the former was legal. If the proceedings, under the execution, are objectionable, they are, at most, merely erroneous, and voidable : but certainly not void. [2 Bay's Rep. 441; 1 Nott & McC. R. 12, 408; 1 Hill's So. Caro. Rep. 239, 304 ; 4 Cranch, 333 ; 4 Wheat. Rep. 503 ; 3 Caine's Rep. 273; 2 Ala. Rep. 676 ; 8 Johns. Rep. 281 ; 13 Id. 97 ; 17 Id. 167–9; 1 Id. 45, n ; 1 Johns. Cases, 153-5 ; 1 Cow. R. 622.]

Huntington, with whom was P. Martin, for the defendant. 1. By the common law, a sheriff continued in office until he received *a writ of discharge,* and any act done by him previous to that time, even after the writ had issued, was legal. In this State, the Constitution limits the tenure of that officer to three years, and the qualification of a successor (the term having expired,) operates so as to discharge his predecessor, without a writ for

that purpose. [Bondurant v. Buford, 1 Ala. Rep. 359 ; Purl's lessee v. Duval, 5 H. & Johns. Rep. 69 ; 1 Salk. Rep. 323 ; 2 Ld. Raym. Rep. 1074 ; 2 Bay's Rep. 120 ; Bacon's Ab. title Sheriff, (J.) ; Boucher v. Wiseman, Cro. Eliz. Rep. 440.]

2. The sheriff who levies an execution must perfect what he has begun, although he ceased to be sheriff before the day of sale. [Bacon's Ab. tit. Sheriff, (J.)   Bondurant v. Buford, and Purl's lessee v. Duval, *ut supra.*]

3. If Poe sold, under the levy made by his predecessor, the sale was void ; because the execution of the *fi. fa.* should have been completed by the latter : and the same result must follow, if he sold upon a levy made by himself, for the execution being levied by Hubbert, could not have been again levied by his successor, at least, upon the same property.

But whether the levy be considered the act of the one sheriff or the other, it is alike irregular. To constitute a levy, the sheriff must do enough to render himself chargeable as a trespasser, except for the protection afforded him by the process under which he acts. [Bacon's Ab. tit. Sheriff, (J.) ; Westervelt v. Pinckney, 14 Wend. Rep. 123.]

COLLIER, C. J.—After an examination of the authorities touching the power of the court over its final process, we said, [in Mobile Cotton Press, &c. v. Moore & Magee, 9 Porter's Rep. 692,] 1. That a party injured by the improper execution of a *fieri facias,* may obtain redress, on motion to the court from which the writ issued. 2. That a sale of land will be set aside, where the sheriff is guilty of a mistake, irregularity, or fraud, to the prejudice of either party, or a third person. 3. So, the misrepresentation or fraud of a purchaser, furnishes just ground for invalidating the sale. In Ware v. Bradford, [2 Ala. Rep. 682,] this court say, " it may be assumed as settled law, that a sheriff's deed cannot be collaterally impeached for any irregularity in his proceedings, or in the process under which he sells. All that is essential in such case, is a judgment, execution thereon, levy, and the sheriff's deed." All other questions are between the parties and the officer executing process ; and either party aggrieved has an adequate re-

medy against him for damages. But if the defendant in execu-
tion would invalidate the sheriff's deed for irregularity in the
execution of a *fieri facias*, it *must* be by a direct proceeding,
having that object in view. To the same effect are the cases
of Fournier v. Curry, [4 Ala. Rep. 321,] and Foster v. Mabe,
[Ib. 402.]

These cases very satisfactorily show, that the party to final pro-
cess, who objects to the manner in which it has been executed,
must apply directly to the court from which it issued, either to
correct or set it aside. Here, the defendant does not present his
objection in that form, but waits until an action is brought against
him by a purchaser under the execution, and then seeks collate-
rally to impeach the sheriff's deed, by showing an irregularity in
the sale and proceedings, preparatory thereto. It has been sup-
posed that the fact of the plaintiffs' knowledge of the manner
in which the levy and sale were made, should place them in a
less favorable attitude, and that the defendant might collateral-
ly impeach their validity. Conceding that the plaintiffs were
aware of all the circumstances, and still we cannot conceive
that the rule of law we have noticed, would be inapplicable.
The reason applies, as well where the purchaser possessed a
previous knowledge, as where he was ignorant of the irregu-
larity in the proceedings of the sheriff.

In respect to the time when the court should be moved to
correct or avoid the execution of such process, it is not neces-
sary, so far as this case is concerned, to determine. We may,
however, remark, that the motion should be made within a sea-
sonable time—most regularly, at the first term succeeding the
return of the process. We will not, however, undertake to
say, that there might not be circumstances, under which the
court should interfere at a subsequent term ; especially, if, there
are sufficient reasons for not having sought its action earlier.
Beyond this, the present case does not require the expression
of an opinion.

From this view, it results, that the Circuit Court should have
instructed the jury, that the sheriff's deed could not be defeated
by any irregularity, either in the levy or sale, under the *fieri*

*facias*, which was shown by extrinsic proof; or rather such evidence should have been excluded. The consequence is, the judgment must be reversed, and the cause remanded.