# Sayre *v.* Elyton Land Company.

*Bill in Equity to vacate and set aside Sale of Land made under Decree of Court of Equity.*

1. *Sale of land under decree of court of equity; remedy to impeach.* Before confirmation, an original bill, in the absence of some peculiar circumstance, is not the appropriate remedy to impeach and set aside a sale made under a decree of a court of equity, the fairness and regularity of the sale being then open to contestation in the suit in which the decree was rendered; and whether, after confirmation, but while the suit is still pending and undetermined, relief should be sought by petition in that suit, or more formally by an original bill, rests largely in the discretion of the court, and depends upon the particular situation of the case, and the relation of the parties to it.

2. *Same.*—But when the sale has been confirmed, and the suit in which the decree of sale was rendered, has been finally determined,

[Sayre v. Elyton Land Company.]

and remains no longer in the court, or under its control, the appropriate remedy to impeach the sale, and to obtain a re-sale, is by original bill.

3. *Pleading in equity; character of, how determined.*—In a court of equity, the real character of a pleading is ascertained from a consideration of the matters of substance embodied therein, its averments, objects and prayer, rather than from the title given it by the pleader, or the failure to entitle it; and thus construed, the pleading in this case, by which it is sought to vacate and set aside a sale of land made under a decree of a court of equity, after the sale had been confirmed, and the suit in which the decree was rendered, had been finally determined, is an original bill, although it is designated therein as an "application," and the party filing it terms himself "complainant or petitioner."

4. *Jurisdiction of chancery court over non-residents, statutory and limited.*—The statute defining the jurisdiction of a court of equity over defendants not residing in the State, and, consequently, not subject to personal service of process, and prescribing the mode of procedure against them, and declaring the effect of the decree rendered, if they do not appear and defend, being in derogation of the common law, and an essential departure from the forms and modes a court of equity ordinarily pursues, must be strictly construed ; and the jurisdiction' and authority thereby conferred must be taken and accepted with all the limitations and restrictions the statute imposes.

5. *Same; character of decree authorized to be rendered.*—Under the statute conferring jurisdiction on a court of equity over non-resident defendants who are not personally served with process, and who do not appear, and authorizing a decree against them (Code, §§ 3830-5), it is not a decree final or conclusive in the first instance that the court is authorized to render, but only a decree contingent and inchoate in its nature, and incapable of execution except upon conditions, and which will become final and conclusive only after eighteen months from its rendition, giving the defendant, for that period, a day in court to open it, and defend upon the merits.

6. *Same; omission to require execution of statutory bond for defendant's protection ; its effect.*—While, under the present statute, the omission in such decree to expressly require the execution of the statutory bond for the protection of the defendant, if the complainant proceeded to an execution of the decree within eighteen months (Code, § 3834), does not affect the regularity of the decree, as it did under the former statute, yet, the bond is none the less essential now than under the former statute to an execution of the decree before it becomes absolute. The decree must be construed in connection with the pleadings on which it is founded, and in the light of the law conferring jurisdiction on the court, and authorizing its rendition; and thus construed, although final and absolute in terms, it must be read and executed as if, upon its face, were written these words: "This decree is not absolute for eighteen months, and within that period must not be executed, unless the complainant or party interested executes a bond payable, approved, and with condition as required by the statute."

7. *Confirmation of sale under decree of court of equity; effect of in this State.*—Although in this State confirmation is essential to complete the sale, and parties should make timely resistance, or be concluded by it, it is not of the dignity and importance which is attached to it generally in courts of chancery; the theory of the statute, in requiring the register, immediately on the sale, and before a report thereof by him to the court, to execute a conveyance to the purchaser, appearing to be, that confirmation shall be anticipated, and shall follow as a matter of course, if the sale is not litigated.

8. *When courts of equity will intervene to set aside sales of land.*—Courts of equity, after confirmation, upon a proper application, will intervene to set aside sales of land made by their officers, or under their process,

VOL. LXXIII.

[Sayre v. Elyton Land Company.]

when such sales are unconscionable, inequitable, or have been conducted in violation of law; but the party seeking relief must acquit himself of a want of diligence in resisting confirmation; and whether he has done so, depends upon all the circumstances of the particular case.

9.   *Same; time within which party must move, depends upon the circumstances of the particular case.*—While the rule is general, that parties seeking to impeach the validity of judicial sales must move within a reasonable time, no certain time can be stated within which the court will grant relief, when there is no more than mere passiveness, mere inaction, and no changes have been made in the property, and the purchaser at the sale is the party who obtained the decree, and the rights and interests of subsequent purchasers have not intervened; the interference of the court, in such case, necessarily depending on the nature of the case, and the circumstances of the parties.

10.   *Non-resident defendant brought in by publication; effect of constructive notice.*—Where a non-resident defendant is brought in by publication merely, the utmost effect that can properly be given to the constructive notice of the suit resulting from such publication, is, that it should charge him only with notice of such proceedings as are regular and in conformity to law; and not with notice of irregularities and illegality which have occurred in the cause, although such notice could fairly be imputed to a party who had been actually served with process.

11.   *Same; when not too late to maintain a bill to set aside a sale of land illegally made under a decree of court of equity.*—Where, on a bill filed to enforce a vendor's lien, a decree for the sale of land was rendered against a non-resident defendant, on publication, without personal service, or appearance, and within six months thereafter the land was sold under the decree to the complainant in the suit, reported to the court, and by it confirmed, without the execution of the bond required of the complainant by the statute, the lapse of five years from the date of the sale will not operate a bar to a bill filed by the defendant, seeking to have the sale set aside on the ground that such bond was not executed as required by the statute, when he, for four years of the time, resided without the State, and had no information that the bond had not been executed, and no improvements had been made on the property, and there had been no change its condition, or in the situation of the parties, which prevented placing them *in statu quo*, preserving their rights, and doing complete justice between them.

12.   *Bill filed to set aside sale of land under decree against non-resident defendant; what no defense.*—In such case, it is no answer to the prayer for relief, that the property brought its full value at the sale, and the proceeds were applied to the payment of the debt on which the decree was founded.

13.   *Same; when information of decree and sale, no notice of illegality in proceedings.*—The fact that such non-resident defendant, two years after the sale and confirmation, was informed of the suit, of the rendition of the decree, and of the sale of the land, is not, of itself, sufficient to authorize the inference that he then also had information of the illegality of the sale; he having a right to presume, and to rest upon the presumption, that the court, its officers, and the complainant for whose benefit the sale was made, had conformed to the statute, from which the proceedings derived whatever of validity that can be attached to them.

14.   *Sale of land by sheriff under execution issued out of a court of equity in suit to enforce vendor's lien; its nature.*—A sale of land by a sheriff under an execution issued, under the statute (Code of 1876, § 3908), out of a court of equity, in a suit for the enforcement of a vendor's lien on land, for a balance ascertained to be due the complainant after a sale under a decree enforcing the lien, is a mere incident to the prior sale, made by the register, and is dependent upon it for validity; and hence, the vacation of the prior sale will operate a vacation of the sale made by the sheriff, when the complainant becomes the purchaser.

[Sayre v. Elyton Land Company.]

15. *Same; subsequent purchaser with notice, how affected.*—A subsequent purchaser from the complainant, in such case, of the land sold by the sheriff, having notice of the infirmity of the complainant's title, is affected by it.

16. *Same; notice to the husband, notice to the wife.*—If a husband purchases such land for his wife, causing a conveyance to be executed to her, notice to him is notice to her.

APPEAL from Jefferson Chancery Court.

Heard before Hon. THOMAS COBBS.

On 18th June, 1873, the Elyton Land Company, a body corporate, sold to Calvin L. Sayre a block of lots in the city of Birmingham in this State, for the sum of $2500, partly for cash, and the balance on credit, taking his notes for the credit installments, and executing to him a bond, conditioned to make title on payment of the purchase-money. On 17th March, 1875, Sayre's notes for the purchase-money being then past due and unpaid, said company filed in the Chancery Court of Jefferson county its bill of complaint against him for the enforcement of its lien on the block of lots for the unpaid purchase-money. At the time of the purchase, and at the time of the filing of the bill, Sayre was, and continued to be until April, 1880, a non-resident of this State, residing in Washington, in the District of Columbia; and the fact of his non-residence, and residence in Washington at the time the bill was filed, being averred therein, under oath, an order of publication was made by the register on the same day the bill was filed; and on Monday, the 13th September, 1875, a decree *pro confesso*, based on publication made under the order therefor, was entered before the register. This decree recites the order of publication, and that, on 18th March, 1875, a copy of the order was posted at the door of the court house of said county, and another copy was mailed to Sayre at Washington. No personal service was made on Sayre, nor did he appear in the cause, either in person, or by solicitor. On 13th November, 1875, a decree was entered in said cause, declaring that the company was entitled to the relief prayed for, and ordering a reference to the register for a computation and ascertainment of the amount due from Sayre on said purchase-money ; and on the same day the register reported as due thereon the sum of $2388.88. On 16th November, 1875, a decree was entered, ordering that, in default in the payment of said sum with interest from date, and the costs of suit, the register should proceed to sell the real estate described in the bill for the payment thereof, after giving notice of the sale by publication, etc. ; and further ordering that, upon making the sale, he should place the purchaser in possession, and execute to him a deed; but not providing for the execution by the company of the bond required by the statute (Code of 1876, § 3834). Under this de-

cree, on 6th March, 1876, the register sold the said real estate to the Elyton Land Company for $1917.30, and executed a deed conveying the same to it; and on 10th May, 1876, he reported the sale to the court, and that, out of the proceeds of sale, he had paid the costs of suit, and had then applied the balance thereof to the satisfaction of the decree in favor of the company; and that, after making such application, there was still due the company on said decree the sum of $590.90. On 11th May, 1876, the report of sale was confirmed, and, on 8th November, 1876, a decree was entered, ordering the issue of an execution against Sayre in favor of the company for said balance of $590.90, with interest thereon from the date of sale. This decree, after reciting that it appeared that the defendant was a non-resident, and that the decree against him " was predicated upon a decree *pro confesso* rendered against him on publication, and that said sale was made without giving bond as required by section 3401 of the [Revised] Code," further ordered that " said complainant do, before issuing execution upon said decree, file with the register of this court a bond as required by said section in the sum of five hundred dollars, with sureties to be approved by the register." On 26th November, 1877, the said company filed with the register, and obtained his approval thereof, a bond in the sum of $100, payable to the register, and conditioned that " if said Elyton Land Company shall account for the value of the rents and profits " of certain other lots in the city of Birmingham, particularly described, " against which the complainant now seeks execution on said decree," and " to be transferred by operation of said decree, and further abide and perform such decree as the court may render, if the said decree taken on the bill *pro confesso* be set aside, then this obligation to be void; otherwise to remain in full force and effect;" and afterwards, on 27th May, 1878, the register issued an execution against Sayre for said balance. Under this execution the sheriff of said county, on 1st July, 1878, sold the real estate described in said bond, as the property of Sayre, and at the sale the Elyton Land Company became the purchaser, receiving a deed from the sheriff. The real estate thus sold by the sheriff was purchased by Sayre from said company on 12th January, 1872, partly for cash, and partly on a credit, the company taking his promissory note for the credit installment, and executing a bond, conditioned to make title upon the payment of the unpaid purchase-money, and the erection by Sayre of certain improvements on the real estate, therein specified; and providing for a forfeiture of the money paid by Sayre on the lot, and his interest therein, in the event he failed to make such improvements. He paid the balance due on the purchase-money in 1873, but never improved the land as the bond required, he claiming, and his

[Sayre v. Elyton Land Company.]

evidence tending to show, that the company released him from the performance of that condition. No deed was ever executed by the company, however, conveying this land to him. On 18th March, 1879, Willis J. Milner purchased for his wife, G. K. Milner, the land sold at sheriff's sale, the company executing a deed conveying it to her, and reciting, as the consideration therefor, " the sum of fifty dollars, paid to the said company by Willis J. Milner, and other good and valuable considerations." Milner, at the time of the execution of this conveyance, was, and had been, since July, 1871, the secretary and treasurer of said company, and, as the evidence tended to show, had notice of the proceedings in said court touching the sales of said two parcels of real estate. After the purchase by Milner, he caused certain permanent improvements to be erected on the said land purchased for his wife; but no improvements were made by the company on the land which they purchased at the register's sale.

On 29th June, 1881, Calvin L. Sayre filed in said court what he termed his " application," but what is construed by this court to be, his bill of complaint, seeking to have vacated and annulled the sale made by the register, and also the sale made by the sheriff, on the ground that he was a non-resident at the time said several proceedings were had, and service was made on him only by publication under the statute, and said sale by the register, as well as the subsequent one by the sheriff, was made without the complainant executing and filing the bond required by the statute. The Elyton Land Company, and Willis J. Milner and his wife were made parties defendant. The complainant averred, and the evidence introduced on his behalf tended to show, his residence in Washington, District of Columbia, from 1866 until about 26th day of April, 1880, when he removed to Montgomery, in this State; that he had no knowledge, notice or information of the filing of said bill against him by said company, or of the decrees, or proceedings, or sales thereunder, until the 19th or 20th of June, 1880, when, going to Milner, as the secretary and treasurer of said company, to make inquiries about his real estate in Birmingham, he was informed that it had been sold under proceedings had in said chancery court; that he did not know of the exact character of said proceedings until a short time before he commenced this proceeding, when he was advised thereof by his counsel; and that no copy of any decree rendered in said suit had ever been served on him. The delay in commencing this proceeding, after he was informed of the sale, he also explains, both in his pleading and in his evidence, by consultations with, and investigations by attorneys, whose advice he sought, and by efforts on the part of himself and counsel to arrive at an

equitable settlement and compromise of his grievances with the land company, and with Milner.

The defendants answered, and incorporated in their answers demurrers to the bill. The matters insisted on by way of defense are sufficiently indicated in the opinion. Evidence introduced on their behalf tended to show that the register addressed and mailed to the complainant at Washington a copy of the order of publication made in said cause, within twenty days from the date of the order, and also a certified copy of the decree of sale rendered in said cause, and that the latter was mailed during the latter part of November, 1875; that there was printed on the back of the envelope in which the copy of the decree was mailed, a request for its return to him at Birmingham, if not called for within ten days, and that it was never returned to him. It was also admitted G. W. Hewitt, an absent witness, would testify "that in the winter of 1878 the plaintiff, C. L. Sayre, came to him while he was in Washington as a member of Congress, and consulted him in regard to the case of the Elyton Land Co. v. C. L. Sayre, under which Sayre's real estate in Birmingham, Ala., had been sold; that he stated to said Hewitt that the Elyton Land Co. had filed a bill against him in the Chancery Court of Jefferson county, Ala., to enforce the vendor's lien on certain real estate in Birmingham, and had obtained a decree, and thereunder all of his real estate in Birmingham had been sold; and that he, the said Hewitt, told him that it would do him no good to assail the decree, or make any move in the matter, as the land would not bring as much then as was due on it by Sayre." Evidence was also introduced on behalf of the defendants tending to show that complainant had a conversation with one Barker in Selma, in November or December, 1876, in which the complainant stated, after being informed by Barker that his Birmingham real estate was worth about $1500, that if such were the case, it would be of no use for him to redeem.

On the hearing, had on pleadings and proof, the chancellor was of the opinion that the complainant was not entitled to relief, and caused a decree to be entered, dismissing his bill; and that decree is here assigned as error.

RICE & WILEY and WATTS & SONS, for appellant. (1) Although the chancery court is, in many respects, a court of general jurisdiction, yet, in a proceeding to deprive a non-resident, who has not been served with process, nor appeared, of his property, that court must be treated, *quoad hoc*, as a court of statutory and limited jurisdiction; and hence, the statute must be strictly pursued.—*Gunn v. Howell*, 27 Ala. 663; *Bloom v. Burdick*, 1 Hill (N. Y.), 130; *Thatcher v.*

*Powell*, 6 Wheat. 119; *Shriver v. Lynn*, 2 How. (U. S.) 60; *Patterson v. Corneal*, 3 A. K. Mars. 618; *Gantly v. Ewing*, 3 How. (U. S.) 707; *Williamson v. Berry*, 8 How. (U. S.) 495; *Massie v. Watts*, 6 Cranch, 159; *Pennoyer v. Neff*, 5 Otto, 714. (2) "Section 3834 of the Code relates to all decrees rendered without personal service; and requires bond to be given by the complainant, or party interested, *if he wish to have execution of his decree before it becomes absolute* under sections 3830, 3831 and 3835 of the Code."—*Holly v. Bass*, 63 Ala. 387. Such decrees are not absolute, but provisional, or *nisi* merely, for eighteen months after the rendition thereof, or, if personal service of the decree should be made on the defendant, and no petition to set aside the decree should be made, for six month from such service.—*Hinton v. Citizens' Mutual Ins. Co.*, 63 Ala. 488; *Lyon v. Robbins*, 46 Ill. 276; *Southern Bank of St. Louis v. Humphreys*, 47 Ill. 227. The policy and meaning of the statute can not be misunderstood. They amount to a virtual prohibition against any sale by the register *before* the decree has become absolute in one of the modes specified in the statute, unless, before the decree has become absolute, the prescribed bond has been approved by the register.—*Custiss v. Turnpike Co.*, 6 Cr. 233; *Elliott v. Peirsol*, 1 Peters, 341. The requisition for such bond is a statutory one, and, therefore, imperative, and can not be dispensed with.—*Harrall v. State*, 26 Ala. 56; *In re Mary Partridge*, 33 Eng. Law and Eq. 165. Section 3834 of the Code "is not a prohibition against making the decree, as the former statute was, but only *forbids its execution*, until restitution bond is executed."—*Holly v. Bass*, 63 Ala. 390. (3) When by statute the taking and approval of a bond is a requisite to the validity of a sale, the statute must be construed as "an imperative order of the legislature to the court, its officers, and all suitors therein," that the sale must not be made until such bond is actually given and approved. And if such bond does not appear to have been given and approved, the sale, if made, is a nullity.—*Stewart v. Bailey*, 28 Mich. 251; *Campbell v. Knights*, 26 Me. 224; *Thornton v. Mulquinne*, 12 Iowa, 554; *Hastings v. Farmer*, 4 Com. 293. In further support of the proposition that the sale was a nullity, the following authorities were cited and discussed: *Sloan v. Frothingham*, 65 Ala. 593; *Smith v. Munday*, 18 Ala. 182; *Morgan v. Ramsey*, 15 Ala. 190; *Loomis v. McClintock*, 10 Watts, 274; *Miller v. Meetch*, 8 Penn. St. 424; *Gantly v. Ewing*, 3 How. (U. S.) 707; *Wules v. Willard*, 2 Mass. 120; *Craft v. Merriel*, 14 N. Y. p. 461; *Hatchett v. Berney*, 65 Ala. 39; *Windsor v. McVeigh*, 93 U. S. 282; *Ex parte Smith*, 23 Ala. 94; *Gresham v. Leverett*, 10 Ala. 384; *Scott v. Noble*, 13 Amer. Rep. 663; Smith on

[Sayre v. Elyton Land Company.]

Statutes, § 667; *Griffith v. Frazier*, 8 Cr. 23; *Melia v. Simmons*, 30 Amer. Rep. 746; *Duncan v. Stewart*, 25 Ala. 408; *Gunn v. Howell*, 27 Ala. 675; *Pettit v Pettit*, 32 Ala. 288; *Vanderpoel v. Wright*, 1 Cowen, 209, and note; *Settlemier v. Sullivan*, 97 U. S. 444. (4) Confirmation of this *void sale* did not impart validity to it. It was no more than "the junction of two nullities."—*Minnesota Co. v. St. Paul Co.*, 2 Wall. 640; *Gray v. Brignardello*, 1 Wall. 636; *Shriver v. Lynn*, 2 How. (U. S.) 60; *Johnson v. Johnson*, 40 Ala. 247; *People v. McLeod*, 1 Hill (N. Y.) 424; 13 Amer. Rep. 663; *Vanderpoel v. Wright*, 1 Cowen, 209. (5) The statute authorizing execution to be issued out of the chancery court (Code, § 3908) has no reference to a decree against a nonresident, when there is no appearance, and no personal service has been had. A decree in such case has no effect beyond the property seized and condemned by the decree.—*Hunt v. Lewin*, 4 Stew. & Port. 138; *Orchard v. Hughes*, 1 Wall. 73. See also *Massie v. Watts*, 6 Cr. 159; *Williamson v. Berry*, 8 How. (U. S.) 495; *Gunn v. Howell*, 27 Ala. 663; *Hunt v. Acre*, 28 Ala. 580; *Winston v. Browning*, 61 Ala. 80. If, by express terms, it applied to nonresidents, it would be unconstitutional.—*Pennoyer v. Neff*, 95 U. S. 714; *Wilburn & Co. v. McCalley*, 63 Ala. 436; *McCurry v. Hooper*, 12 Ala. 823; *Eslava v. Lepretre*, 21 Ala. 504. The decree authorizing execution against Sayre for balance ascertained to be due after sale shows on its face that it is void; the execution was also void, conferring no power on the sheriff to sell; and hence, the sale made by the sheriff was void, and did not affect the rights of Sayre.—*Westerwelt v. Lewis*, 2 McLean, 511; *Miller v. Dungan*, 36 N. J. L. 21; *Clymore v. Williams*, 77 Ill. 618; Rorer on Inter-State Law, p. 125; *Lincoln v. Tower*, 2 McLean, 473; *Hodson v. Tibbetts*, 16 Iowa, 97; Drake on Att. § 5; *Cooper v. Reynolds*, 10 Wall. 308; *Thompson v. Emmert*, 4 McLean, 96; *Ricketts v. Henderson*, 2 Cr. (C. C.) 157; *Kilburn v. Woodworth*, 5 Johns. 37; *Robinson v. Ward*, 8 Johns. 67; *Kingsbury v. Yniestra*, 59 Ala. 320; *Harris v. Pullman*, 84 Ill. 20; *Pennoyer v. Neff*, 5 Otto, 714; *Thompson v. Whitman*, 18 Wall. 457; 2 Jones on Mortg. § 1716; 53 N. Y. 280; *Lawrence v. Fellows*, Walker (Mich.), 468. (6) If the sale by the register was *void* for want of *power* in him to make it, then the court in which the decree was rendered, is the proper and only one in which a motion or petition to vacate the sale can be made.—*McCartney v. King*, 25 Ala. 681; *Boykin v. Cook*, 61 Ala. 472; *Tudor v. Taylor*, 26 Vt. 444. (7) The appellant has a "legal right" to have a resale of the property under the decree of sale, which decree is not complained of, and is not

[Sayre v. Elyton Land Company.]

asked to be set aside; and his bill in this case is a proper assertion of that right.—*Ray v. Womble*, 56 Ala. 32. (8) This "legal right" has not been barred or impaired by the delay shown by the record. The following authorities cited and discussed on this point: *Reese v. Kirk*, 29 Ala. 406; *Sloan v. Frothingham*, 65 Ala. 598; *Allore v. Jewell*, 94 U. S. 506; *Abercrombie v. Conner*, 10 Ala. 293; *Forrest v. Camp*, 16 Ala. 643; *Morton v. Smith*, 2 Dillon, 316; *Thompson v. Lee*, 31 Ala. 292; *Pierce v. Wilson*, 34 Ala. 596; *Kern v. Burnham*, 28 Ala. 428; *Foster v. Gressett*, 29 Ala. 393; *Couse v. Boyles*, 3 Green's Ch. 212; *American Ins. Co. v. Oakley*, 9 Paige, 261; *Johnson v. Johnson*, 40 Ala. 247; *Ex parte Crenshaw*, 15 Peters, 123; *Ex parte Sanford*, 5 Ala. 562; *Hood v. Mobile Bank*, 9 Ala. 336; *Tisdale v. Gandy*, 1 Hawks, 282; *Rawdon v. Rawdon*, 28 Ala. 565; *Cawley v. Leonard*, 1 Stew. Eq. (N. J.) 467; *Mutual Life Ins. Co. v. Sturges*, 6 Stew. Eq. (N. J.) 328; *National Bank v. Sprague*, 6 C. E. Green (21 N. J. Eq.) 458. (9) Mrs. Milner was not a *bona fide* purchaser without notice. She is charged with notice of whatever appears on the proceedings under which her grantor, the Land Company, claims.—*Marks v. Cowles*, 61 Ala. 299; *McDonald v. Mobile Life Ins. Co.*, 65 Ala. 358. · See also *Southern Bank v. Humphreys*, 47 Ill. 227; *Johnson v. Thweatt*, 18 Ala. 741; *Witter v. Dudley*, 42 Ala. 616. (10) Clearly, a non-resident, against whom his vendor may file a bill in this State to enforce his lien on real estate, has a right to presume that all the officers of the court in which the bill is filed, will give him the benefit of the safe-guards provided by our statutes for his protection, and to act on this presumption until some fact is brought to his attention, which ought to put a prudent man on inquiry as to whether these officers have treated him as the law required. If this be admitted, there is not even color for the assertion, that Sayre's delay in making the present application deprived him of his right to have an illegal and prohibited sale of his property vacated.

D. S. TROY, JOHN T. TERRY and ELLIS PHELAN, *contra.*—(1) The decree of sale was in all respects regular, and remains in full force, and is not questioned. While that decree remains in full force, and is not attacked, the only way to set aside a sale under it, is by a motion or petition in that cause. There is no equity in an original bill filed to set aside such a sale. *Hunt v. Ellison*, 32 Ala. 190; *Brown v. Frost*, 10 Paige, 253; Story's Eq. Pl. §§ 388, 428a, 640, 643–4. (2) It is manifest that this proceeding is intended to operate as a petition in the case of *Elyton Land Co. v. Sayre*, and as an original bill in the case of *Sayre v. Milner* and others. Such a proceeding is unknown

[Sayre v. Elyton Land Company.]

to any system of chancery pleading, and no relief ought to be granted upon it, even if, on the facts, the party was entitled to relief.—*Brown v. Frost*, 10 Paige, 243. (3) The sale under the decree was not a sale by a sheriff, or by an executor under a power, but it was a judicial sale; that is, it was a sale under the decree of a court of competent jurisdiction, which had to be, and was reported back to the court which ordered it, for comfirmation. In all such cases, there is "a day in court" to all parties interested, between the day of sale and its confirmation, to object to it; and an unbroken chain of decisions hold that in all such cases the sale is not void, but at most is only voidable.— *Wyman v. Campbell*, 6 Port. 219; *Fields v. Goldsby*, 28 Ala. 218; *Hunt v. Ellison*, 32 Ala. 190; *Voorhees v. Bank*, 10 Peters, 451; *Holly v. Bass*, 63 Ala. 387; *Dawson v. Litsey*, 10 Bush, 410. (4) The sale being voidable only, and not void, it could only be set aside on *timely* application, and for good cause shown. If the application had been made within eighteen months from the date of the decree, possibly the mere failure to give the bond would have been sufficient cause for setting aside the sale. But if the bond had been given, it would have become *functus* at the expiration of that time. The failure to apply to open the decree within eighteen months would have discharged the bond, if it had been given, and rendered a breach of its condition impossible; and it is idle to say that the non-existence of a bond which, by its very terms, would have become *functus* and nugatory at the time the application to set aside the sale was made, would, without more, be good ground for setting it aside. There was no other ground for setting aside the sale, and none other is alleged or proved. The sale was fair, and the property brought its then full value. (5) But if there had been a good ground for setting aside the sale, the application was not in time. Sayre ought to have known what was being done with his real estate from the spring of 1876, when it was sold, to the spring of 1880, when he says that he first heard of the sale; and the law presumes that he did know.—*Pennoyer v. Neff*, 5 Otto, 714. But if, in fact, he did not know, he can not take advantage of his own gross laches in failing to obtain such information, to enable him speculate at the expense of his vendor. An application to set aside a sale will never be granted, when it will enable one party unjustly to speculate at the expense and risk of the other.—*Hunt v. Ellison, supra; Robinson v. Cullom & Co.*, 41 Ala. 693; *Gentry v. Rogers*, 40 Ala. 442; *McEvers v. Markler*, 1 Johns. Cases, 248; *Nichols v. Nichols*, 10 Wend. 560. (6) The decree ordering the execution, and the execution issued thereunder were not void. This point discussed at length, and the following authorities cited: Freeman on Judgments, §§ 215–

[Sayre v. Elyton Land Company.]

244; *Henderson v. Staniford*, 105 Mass. 504; *Shephard v. Mayor*, 13 How. (N. Y.) 286; Code of 1876, § 3908; *Boswell v. Otis*, 9 How. (U. S.) 336; *Pennoyer v. Neff*, 5 Otto, 714; *The Mary*, 9 Cranch, 296. (7) In *Butler v. Butler*, 11 Ala. 668, it is said that the failure to execute the bond which the law requires when a decree is rendered against a non-resident, is error. This decision was made under the influence of the statute as found in Clay's Digest. This has been changed, and the failure of the decree to require the bond, is not available on appeal.—*Holly v. Bass, supra; Hinton v. Citizens Ins. Co.*, 63 Ala. 488; *Hurt v. Blount*, 63 Ala. 327; *Paulling v. Creagh*, 63 Ala. 398; *McCollum v. Hubbert*, 13 Ala. 289; *Daniel v. Modawell*, 22 Ala. 365; *McCaskell v. Lee*, 39 Ala. 131; *Lankford v. Jackson*, 21 Ala. 650.

BRICKELL, C. J.—There is more of apparent than of real difficulty in determining the character of the pleading which is the foundation of the present proceeding. The difficulty arises from the fact, that the pleader seems to have intended it should serve the purposes of a petition, or of an original bill, as the one or the other may by the court be deemed the more appropriate remedy to obtain the relief sought. As a general rule, while the suit is undecided (while it remains in the court, and subject to its control), in which a decree of sale is rendered, an original bill is not the appropriate remedy to impeach and set aside the sale. In that suit, the fairness and regularity of the sale are open to contestation; and before it is perfected by confirmation, in the absence of some peculiar circumstances, can not be assailed and litigated in a collateral suit. Until confirmation, the sale is not complete—is under the control of the court, which can exercise a sound discretion in regard to it, granting or withholding confirmation, as the rights and interests of the parties, and the ends of justice may require.—*Hutton v. Williams*, 35 Ala. 503. Any party in interest, or the purchaser, if a stranger, who by his bid becomes a *quasi* party, may move for, or resist confirmation; and it is but seldon there can be either reason or justice for resorting to collateral remedies. The order or decree of confirmation is essentially a judgment; it fixes the rights and liabilities of the purchaser, and operates a divestiture of title. It is an incident of the suit in which the decree of sale is rendered, and ought, in that suit, to be resisted. If there is no resistance, whatever of injury may result is attributable to a want of diligence, from which courts can not relieve parties. Cases will and do arise, in which an inequitable or illegal sale may be confirmed, and a want of diligence in resisting confirmation not attributable to the parties in interest, the court is not powerless to relieve them. When the suit in which

[Sayre v. Elyton Land Company.]

the decree was rendered is pending and undetermined, after confirmation, whether relief should be sought by petition, or more formally by bill, rests largely in the discretion of the court and depends upon the particular situation of the case and the relation of the parties to it. "It may be difficult," said Chancellor Kent, in *Codwise v. Gelston*, 10 Johns. \*521, "to draw a precise line between cases in which a party may be relieved upon petition, and in which he must apply more formally by bill. Petitions are generally for things which are matters of course, or upon some collateral matter which has reference to a suit in court." And further, "the mode of application depends very much upon the discretion of the court." If there be not peculiar circumstances rendering it necessary, that the proceedings and issues should be put in a more formal and permanent shape, than they could be by petition, or if petition is not an inadequate remedy, the court will discountenance a resort to the more dilatory and expensive remedy of an original bill. The question is one largely of mere convenience.—*Brown v. Frost*, 10 Paige, 243; *Tooley v. Kane*, Smedes & Marsh. (Ch.) 518; *Ashbee v. Cowell*, Busbee's Eq. (N. C.) 158; *Campbell v. Gardner*, 11 N. J. Eq. 423. A suit in equity can rarely be commenced otherwise than by original bill, or a bill in the nature of an original bill; it is only in exceptional cases that a petition is the proper mode of commencing suit. It pertains to and is an incident rather of a pending suit, unless it is addressed to some special authority or jurisdiction the court exercises; instances of which are, the appointment of a guardian for an infant, or the allowance of maintenance from his estate. When the original suit, in which the decrees of sale and of confirmation were rendered, has been determined finally—no longer remains in the court, and under its control,—the appropriate remedy to impeach the sale, and to obtain a resale, is by original bill.—*Coffey v. Coffey*, 16 Ill. 141; *Henderson v. Herrod*, 23 Miss. 434; *McMinn v. Phipps*, 3 Sneed (Tenn.), 196; *Crawford v. Tuller*, 35 Mich. 57. In the present case, the original suit had been finally determined, and the institution of a new proceeding was necessary to enable a party aggrieved to obtain relief from the inequitable or illegal execution of the decrees rendered in its progress. The bill is throughout termed an "application," and the complainant is termed "complainant, or petitioner;" these terms are unimportant in construing the pleading and ascertaining its real character. In a court of equity, this is ascertained from a consideration of the matters of substance embodied in the pleading, from its averments, objects and prayer, rather than by the title given by the pleader, or by his neglect to entitle it.—*Ex parte Smith*, 34 Ala. 455. When these are considered, it is obvious the

[Sayre v. Elyton Land Company.]

present pleading is an original bill, and seems to us the most appropriate proceeding, if not the only proceeding, which could be framed to obtain the relief sought. The more important point of controversy is the validity of the several sales impeached by the bill; the first of which was made by the register, under a decree· of the court ordering a sale; the second was made by the sheriff, under an execution·issuing on a decree for the recovery of a specific sum of money, subsequently rendered in the same suit. These decrees were founded on a decree *pro confesso* taken against the appellant, on a bill filed against him as a non-resident of the State, and of which he had notice only by publication. The object and purpose of that bill was the enforcement of a lien for the payment of the purchase-money on lands situate in this State, the contract of sale having been here made.

The jurisdiction of a court of equity over defendants not residing in the State, and consequently not subject to be personally served with process, is statutory and limited. It is not of every case of equitable cognizance against such defendants, that the court may take jurisdiction. The statute defines with precision the cases in which the court may intervene. The object of the suit must concern lands or personal property situate in the State; or the cause of action must have originated here; or performance of the act which is to be compelled, the parties must have contemplated should he here performed.—Code of 1876, § 3753. If the case be not of the character defined in the statute, though it is of undoubted equitable cognizance, the court is without jurisdiction of a defendant not brought in by the personal service of process.— *Holman v. Bank of Norfolk*, 12 Ala. 369. *Glover v. Glover*, 16 Ala. ·440. The objects and purposes of the original suit, independent of the fact that ·the cause of action arose in the State, made a case of which the statute gave the court jurisdiction, though the appellant, the defendant to be affected and bound by the decree, was not a resident of the State.

The statute not only defines the cases in which the court may take jurisdiction of non-resident or absent defendants, but it appoints and orders the mode of proceeding against them, and declares the effect of the decree rendered, if they do not appear and defend. The jurisdiction and authority, like all jurisdiction and authority derived from, and dependent upon statute, must be taken and accepted with all the limitations and restrictions the statute creating it may impose. These restrictions and limitations the courts are bound to ·observe; they can not be dispensed with, however much they may seem to embarass, or however unnecessary they may seem to be in the administration of justice in particular cases. The statute is in

[Sayre v. Elyton Land Company.]

·derogation of the common law, is an essential departure from the forms and modes a court of equity pursues ordinarily, and· must be strictly construed. Proceedings under it must be ·closely watched, or it may become an instrument for the infliction of irreparable wrongs upon defendants to whom notice is imputed by construction. It is not a decree final or conclusive, in the first instance, the court is authorized to render against the absent defendant. The words of the statute are clear and unambiguous: "A decree made against a defendant, without personal service, who does not appear, is not absolute for ·eighteen months from the rendition thereof." At any time within that period, the defendant may file a petition to set ·aside such decree and to defend upon the merits; and upon ·sufficient cause shown, the chancellor has full power to open the decree, ·and retry the cause as if the decree had not been r'endered.—Code of 1876, §§ 3830-31. Within eighteen months the decree may be rendered absolute by the service of ·a copy upon the defendant in person, if for six months after ·such service he fails to make application to open it, and to be let in to defend.—Code of 1876, § 3835. It is further provided that before " the execution of such decree, the plaintiff, or party interested, must give bond with two sureties, payable ·to and approved by the register, in a penalty to be prescribed by the chancellor or such register, conditioned to pay the pecuniary value of the personal property which may be disposed of, or placed beyond the control of the court or party, by the execution of the decree, and interest thereon from the time such property is so disposed of, or placed beyond such ·control; and to account for the value, rents and profits of any real estate transferred by the operation of such decree ; and further to abide and perform such decree as the court may render, if the decree taken on the bill *pro confesso* is set aside," ·etc.—Code of 1876, § 3834. The statute forms a system, intended to be entire and complete, touching the jurisdiction the court may exercise over defendants residing without the State, and in every line manifests care and solicitude to guard and protect their rights and interests.

The first decree rendered in the original suit declared a lien for the payment of the purchase-money, the amount of which had been ascertained by a reference to the register, and ordered; that if, with interest and costs of suit, it was unpaid for thirty days, the register should proceed to sell the lands for the payment thereof. The execution of a statutory bond for the protection of the defendant, if the complainant proceeded to execu- tion within eighteen months, was not expressly required. The omission does not affect the regularity of the decree, as it

would have been affected under the former statute.—*Holly v. Bass*, 63 Ala. 387. The bond is not, however, less an essential now than under the former statute, when it was error to render a decree against a non-resident defendant without expressly requiring that it should be given as a condition precedent to the execution of the decree before it became absolute. In all the properties of finality and conclusiveness, of which the decree was wanting under the former statute, it is wanting under the present statute. Whatever may be its form, or terms, the law incorporates these properties into the decree, though it may not express them; and the condition precedent to execution is impressed upon it, though, if it were not construed, as it must be, in connection with the statute, an immediate, unconditional execution would be authorized. A decree not final or conclusive—contingent, inchoate, incapable of execution except upon conditions; a decree which will become final and conclusive only after the expiration of eighteen months from its rendition; a decree giving the defendant, for that period, a day in court to open it and defend upon the merits, is the only character of decree the court was authorized to pronounce.—*Holly v. Bass*, 63 Ala. 387; *Lyon* v. *Robbins,* 46 Ill. 276; *Southern Bank v. Humphreys*, 47 *Ib.* 227. In form and terms, the decree was final; but, in fact and in law, it was simply provisional; subject to be set aside, on an application to the chancellor, showing a meritorious defense, at any time within eighteen months from the day of its rendition. It bears a close resemblance and analogy to the decree *nisi* of the English practice, which is rendered "when a cause is called for hearing, and the defendant does not appear to open his answer. Upon proof of the service of subpœna to hear judgment, the court will enter such decree for the plaintiff as his counsel may desire, accompanying it with a clause to the effect, that it should be binding, unless, being served with process, the defendant shall, within a given time, show cause to the contrary."—Freeman on Judgments, § 10. Every decree or judgment must be construed in connection with the pleadings on which it may be founded, and in the light of the law conferring jurisdiction on the court, and authorizing its rendition. Unless we impute to the decree error and irregularity; unless we give to its terms the largest significance of which they are capable, and dissociate them from the pleadings upon which the decree is founded, and from the statute conferring on the court jurisdiction to render any decree, we must read this decree, as if upon its face were written: *This decree is not absolute for eighteen months; and within that period must not be executed, unless the complainant or party interested executes a*

[Sayre v. Elyton Land Company.]

bond payable, approved, and with condition, as required by the statute.

Within six months after the rendition of the decree; in less time than it could have become absolute if the defendant had been served personally with a copy thereof, the register made sale of the lands, reported the sale to the court, and it was confirmed, without the execution of the bond required by the statute. Construing the decree in connection with the statute, as it must be, and ought to have been construed, it did not authorize the sale; and the sale was in direct violation of the provisions and prohibitions of the statute. It is not to be doubted, that if exceptions had been taken, the chancellor would have refused confirmation, and ordered a resale to be conducted in conformity to the statute. Whether the sale and confirmation ought to be pronounced void, as is earnestly insisted by the counsel for the appellant, is a question not free from difficulty, upon a consideration of which the case does not compel us to enter. A sale without a decree to support it is a nullity; and it may be doubted whether a mere general order of confirmation can impart validity to it.—Minnesota v. St. Paul, 2 Wall. 640. In this State, confirmation, though essential to complete the sale, and though parties should make timely resistance, or be concluded by it, is not of the dignity and importance which is attached to it in courts of chancery generally. Before report, and before there can be confirmation, the statute requires the register, immediately on the sale, to convey to the purchaser.—Code of 1876, § 3208. The theory of the statute seems to be, that confirmation shall be anticipated, and shall follow as a matter of course, if there is not litigation of the sale. Courts of equity, after confirmation, upon a proper application, will intervene to set aside sales made by their officers, or under their process, where such sales are unconscientious, inequitable, or have been conducted in violation of law.—National Bank of Metropolis v. Sprague, 21 N. J. Eq. 458; Mut. Life Ins. Co. v. Sturges, 33 N. J. Eq. 328; Mut. Life Ins. Co. v. Goddard, Ib. 482; Henderson v. Herrod, 23 Miss. 455. The party intervening for relief must acquit himself of a want of diligence in resisting confirmation; when he will stand acquitted, depends upon all the circumstances of the particular case. While the court is unwilling that its decree or process shall be employed to work illegality, injustice, or oppression, and willingly intervenes to rectify a misuse or abuse of either, restoring parties to the condition in which they were before the wrongs occurred, it is only the diligent they are active to serve.

It seems impossible fairly and justly to impute to the appellant a want of diligence in resisting the confirmation of the

sale. Of the suit he had only constructive notice, and the utmost effect which can properly be given to such notice, is, that it shall charge the party only with notice of such proceedings. as are regular and in conformity to law. It would be a harsh rule that would charge a party, drawn into the court only by constructive notice, with knowledge of irregularities and illegality in the proceedings, though such knowledge could be fairly imputed to a party who had appeared, or a party who had the opportunity of appearing by the actual service of process. Conceding to the evidence of Hewitt the effect claimed for it by the appellees, it shows only that in 1878, near or quite two years after the sale and confirmation, the appellant had been informed of the suit and of the sale. There is no room for the inference that he had been informed of the illegality of the sale; that the complainant, in violation of the statute, had neglected to give the required bond, without which a valid sale could not be effected. Knowledge of the sale is essentially different from knowledge that it was invalid, and impeachable because invalid. If he had knowledge of the sale, he had a right to presume, and to rest upon the presumption, that the court, its officers, and the complainant for whose benefit the sale was made, had conformed to the statute, from which the proceedings derived whatever of validity can be attached to them.

In *Holly v. Bass, supra,* we expressed the opinion, that the failure of a complainant or the party interested, obtaining a decree of sale against a non-resident, to execute the statutory bond, if he proceeded to execute the decree before it became absolute, would "furnish good ground for refusing to confirm the sale, or for setting it aside, if moved for within a reasonable time." It may be, the case did not, of necessity, require an expression of opinion upon this point; but we can perceive no substantial reason for doubting its correctness. The rule is very general, that parties impeaching the validity of judicial sales must move within a reasonable time.—*Hubbert v. McCollum,* 6 Ala. 225 ; s. c. 13 Ala. 289 ; *Daniel v. Modawell,* 22 Ala. 365 ; *McCaskell v. Lee,* 39 Ala. 131. The sale, though inequitable, or illegal, the parties may confirm by acts. *in pais;* and this is especially true when its fruits have enured to the benefit of the party complaining. A confirmation *in pais* in a court of equity is the equilavent of a judicial confirmation.—*Redus v. Hayden,* 43 Miss. 614. If with full knowledge of the facts a party should take and hold, or should claim the fruits of the sale; or if he should acquiesce until subsequent interests are acquired in the lands, and improvements have been made, rendering it difficult to place the purchaser *in statu quo,* the court will not interfere to vacate the sale. In either of these cases, there is much of reason and justice of an estoppel

[Sayre v. Elyton Land Company.]

arising from the conduct or the silence of the party when it was a duty to speak. When there is no more than mere passiveness, mere inaction, and there have been no changes made in the property, and the purchaser at the sale is the party obtaining the decree, the rights and interests of subsequent purchasers not intervening, no certain time can be stated within which the court can relieve. The interference of the court depends necessarily upon the nature of each case and the circumstances of the parties.—Perry on Trusts, §§ 228–29. If the facts are unknown to the party complaining, or have been concealed, or he has been without the country; the lapse of time, short of the period which will operate a bar under the statute of limitations, is of less importance than when the party is fully informed, and is not under disability, or absent from the State. The lapse of time relied on as a bar to relief, a little more than five years from the sale, is not available in this case. During four years of the period the appellant resided without the State, had no information that the sale was irregular and illegal; the complainant was the purchaser of the property, has made no improvements, and there is no change in the condition of the property, or in the situation of the parties which will prevent placing them *in statu quo*, preserving their rights, and doing complete justice between them.—*Allore v. Jewell*, 94 U. S. 506. Nor is it an answer to the prayer for relief, that the property at the sale commanded its full value, and the proceeds were applied to pay the debt of appellant. Men can not be deprived of their property, even for the payment of just debts, otherwise than by due process of law; and courts can not take to themselves the power of disposing of lands. The power, when it can be rightfully exercised, is derived from the law; and if there be not substantial compliance with the law conferring the power, it is of injury to the party who is to be disseized of his freehold. If upon the theory, that no wrong is done by a sale of property in violation of law, when the proceeds of sale are applied to pay a just debt, parties were allowed to wield the process of the courts in their own favor, exacting the measure of justice which they claimed, however rightfully, it is manifest oppression and abuse would soon follow, and private rights would be subverted.—*Sherman v. Boyce*, 15 Johns. 447.

The sale by the sheriff was a mere incident to, and dependency of the sale by the register. In the absence of a statute conferring on the court the jurisdiction, on the foreclosure of a mortgage, or upon the enforcement of the lien of a vendor on lands, a court of equity does not render a decree for any balance of the mortgage debt, or of the purchase-money, which may remain unpaid after a sale under the decree of foreclosure, or under the decree enforcing the lien.—*Hunt v. Lewin*, 4 Stew. &

Port. 138; *Winston v. Browning*, 61 Ala. 80; *Orchard v. Hughes*, 1 Wall. 73. The statute confers on the court jurisdiction to render such decrees, and to enforce them by execution, only when " the property ordered to sale shall have been sold, and the sale confirmed, and the balance due ascertained by the decree of the court."—Code of 1876, § 3908. The balance can not be ascertained, nor the decree rendered, until there has been a sale and confirmation by the court. The rendition of the decree is, of consequence, dependent upon the prior sale and its confirmation. If a stranger, in good faith, should become a purchaser at a sale under execution issuing on the decree rendered upon the confirmation of a sale, which was subsequently vacated, his rights would probably be protected, as they would be protected, if he had purchased under process issuing on a judgment or decree which was subsequently reversed.—*Marks v. Cowles*, 61 Ala. 304. But when, as in the present case, the party obtaining the decree becomes the purchaser, it is of his own election and at his own peril, that he executes the decree; and the vacation of the prior sale will operate a vacation of the subsequent sale dependent upon it for validity. The same reasons of policy which secure to an innocent purchaser a valid title, do not exist when the party obtaining an erroneous or unjust decree becomes the purchaser; and it would be simple injustice to allow a party, guilty of irregularity or illegality, to profit by it. The full measure of justice to him is restoration to the condition in which he was when the irregularity occurred. *Marks v. Cowles, supra.* Subsequent purchasers from him, having notice of the infirmity of his title, are affected by it. There is no doubt that Milner, the purchaser from the company, had full notice of all the irregularities attending the sales, and knew the rights of the appellant. Notice to him was notice to his wife, as whose agent or trustee he acted in causing the conveyance to be made to her instead of himself, as was originally intended.

We do not inquire, whether the appellant had an interest in the lands sold under the execution, which was subject to be levied on and sold. The quality of his interest, whether he can ever acquire the legal title, or the terms and conditions upon which he may acquire it, are inquiries which will arise and can be determined properly, only when he may claim specific performance of the contract of purchase. The only relief which can now be afforded him, is a vacation of the sale by the sheriff, which follows from a vacation of the prior sale upon which it was dependent.

The decree of the chancellor must be reversed, and a decree here rendered in conformity to this opinion.